991 A.2d 254 (2010)
412 N.J. Super. 426
CATHOLIC FAMILY AND COMMUNITY SERVICES (Friendship Corner I and Friendship Corner II), Petitioner-Appellant,
v.
STATE-OPERATED SCHOOL DISTRICT OF the CITY OF PATERSON, Passaic County, and Paterson Internal Audit Unit, New Jersey State Department of Education, Respondents-Respondents.
A-0438-08T1
Superior Court of New Jersey, Appellate Division.
Argued September 23, 2009.
Decided March 31, 2010.
*256 Vito A. Gagliardi, Jr., Morristown, argued the cause for appellant (Porzio, Bromberg & Newman, P.C., attorneys for appellant; Mr. Gagliardi, of counsel and on the briefs; Damian Christian Shammas, on the briefs).
Cynthia Raymond Rimol, Deputy Attorney General, argued the cause for respondent New Jersey State Department of Education (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Rimol, on the brief).
Schenck, Price, Smith & King, LLP, Morristown, attorneys for respondent State-Operated School District of the City of Paterson, join in the brief of respondent N.J.Dep't of Educ.
Before Judges CUFF, PAYNE and C.L. MINIMAN.
The opinion of the court was delivered by
CUFF, P.J.A.D.
In this appeal, we review a final decision of the Commissioner of Education (Commissioner) that upheld an audit of the Abbott[1] Preschool Program conducted by Catholic Family & Community Services (CFCS) for the 2003-04 school year and ordered repayment of funds expended for ineligible administrative services and computer equipment. At issue in this appeal is whether approved expenses calculated in accordance with budget guidelines promulgated by the New Jersey Department of Education (DOE) may be disallowed. We reverse.
CFCS is a not-for-profit corporation that operates various social service programs through the Roman Catholic Diocese of Paterson. It operates an early childhood education program for 360 children under the name Friendship Corner Schools for the Paterson Public School District (Paterson District). As a State-operated school district under the guidance of the DOE, the Paterson District must implement that Abbott Preschool Program by offering high quality early educational programs to its students. The Paterson District may contract with State-approved private community organizations, like CFCS, to meet this obligation.
On July 3, 2003, the Paterson District and CFCS entered a contract for the provision of early childhood education services at CFCS's Friendship Corner Schools from July 1, 2003 to June 30, 2004. This Abbott Preschool Educational Program Contract (Abbott Contract) provides that the Friendship Corner Schools will "provide a full-day, full-year preschool program to children residing in the [Paterson *257 District]." During the ten hour school day, six hours consist of a "comprehensive educational program" funded with Abbott monies. The remaining four hours are funded under a separate agreement through a Department of Human Services "wrap-around care" program.
The Abbott Contract outlines the financial responsibilities of both parties. Pursuant to Section VI, paragraph F, the Paterson District makes prorated monthly payments to CFCS based on the approved 2003-04 budget. Section VI, paragraph G requires CFCS to submit quarterly expenditure reports to the Paterson District. If CFCS has "unexpended or misspent funds during and at the end of the school year based on the quarterly expenditure reports, enrollment records and monthly payments made by the district," the Paterson District will recoup the funds.
More generally, Section VI, paragraph K of the Abbott Contract states that CFCS:
shall implement sound fiscal practices including, but not limited to, maintaining a financial management system that provides timely, accurate, current and complete disclosure of all financial activities related to the Agreement, in accordance with Generally Accepted Accounting Principles; making expenditures in strict accordance with the budget approved by the Paterson [District] and the [DOE]; and amending the approved budget with the approval by the board of education and the [DOE].
In addition, Section XII, paragraphs A and E of the Abbott Contract require CFCS to retain "[a]ny and all records concerning the operation of the program" and to have records available for audit and/or inspection.
The Paterson District's financial responsibilities under the Abbott Contract, indicated in paragraph M of Section VIII, include the provision of "financial management assistance to [CFCS] in the development and monitoring of [CFCS]'s annual budget and implementation of the preschool program." Additionally, paragraph Q requires the Paterson District to "conduct on-site monitoring at least twice in each contract year to assess compliance" and "ensure that [CFCS] is complying with the contract requirements."
As an Abbott Preschool Program provider, CFCS is also required to submit a budget to the Paterson District. The DOE provides written budget instructions and guidelines to Paterson and all other Abbott districts, which in turn, are distributed to providers such as CFCS. After the provider formulates a budget, the district incorporates it into a master budget for submission to the DOE.
On July 3, 2003, CFCS submitted a budget for the 2003-04 school year and the Paterson District approved it. In creating its budget, CFCS followed the DOE-prepared Private Provider One-Year Programmatic Budget, School Year 2003-04: Budget Instructions and Guidelines (Budget Guidelines). At issue in this appeal are administrative and indirect costs. As to this issue, the Budget Guidelines state that "[n]o more than 17.65 percent of a provider's total approved Abbott Educational Program budget may be allocated for administrative and indirect costs associated with operating the Abbott preschool program." The Budget Guidelines also state that "[p]roviders do not need to document their administrative and indirect costs, as each provider will receive a fixed amount for such costs based on their approved Abbott Educational Program Costs." Finally, the Budget Guidelines supply a formula that providers can use in creating a budget for these costs: "Approved Abbott Educational Program Costs × 17.65% = Administrative/Indirect *258 Cost[s]." The Budget Guidelines categorize administrative and indirect costs for the Abbott Preschool Program as: "all administrative and clerical salaries, including the director's salary, ... accounting and payroll fees, office equipment, office supplies, ... office space, utilities, telephone, insurance, and building maintenance and repair."
The 2003-04 budget submitted by CFCS and approved by the Paterson District included 17.65% for administrative/indirect costs. CFCS incorporated in its budget all the indirect costs and administrative expenses incurred to operate the preschool program, including the expenses associated with the preschool program director, one secretary, one custodian, and prorated expenses for the CFCS Executive Director and other administrative support personnel who participate in the management and supervision of the preschool program up to the allowed 17.65%. Following an audit by the DOE's Paterson Internal Audit Unit (Paterson IAU), CFCS was informed that administrative/indirect costs were limited to the costs of the program director, a secretary and a custodian. Based on this finding and others, the Paterson IAU recommended that the Paterson District recover $223,800.14 from CFCS.
The Paterson District accepted this recommendation and reduced the funds due to CFCS for the 2005-06 school year by that amount. CFCS sought and obtained injunctive relief in the Superior Court pending an appeal to the DOE Commissioner. The matter was forwarded to the Office of Administrative Law as a contested case in March 2007. By the close of the proceedings, the parties had resolved all disputed expenditures, except for the administrative/indirect costs and postage and computer equipment costs. The amount in dispute was reduced to $88,858.
The Administrative Law Judge (ALJ) rendered an Initial Decision on March 25, 2008. He recommended that CFCS was not required to repay the Paterson District the disputed funds. His factual and legal analysis focused on the 2003-04 Budget Guidelines. He found that Joseph Duffy, Bob Jacobs, and Tom Verghese had responsibilities for multiple CFCS programs including the preschool program. The reports submitted by CFCS revealed that CFCS was treating part of the salaries for Duffy, Jacobs and Verghese as administrative expenses of the preschool program. The ALJ also found that the Paterson District did not provide oversight and monitoring during the 2003-04 school year to correct any budgetary mistakes.
The ALJ also found that in prior years, budgets had specific categories for administrative/indirect costs; however, in anticipation of the 2003-04 school year, "administrative costs were collapsed into one line on the budget to give providers more flexibility to spend money within allowable costs for administrative and indirect costs." Inclusion of a portion of administrator salaries other than the cost for one director was disallowed because the Paterson IAU allowed expenses for only one director the prior year. The Internal Audit Units of the three State-operated school districts, including the Paterson District, received instructions from the supervising DOE accountant to continue the one director limitation of prior years. This direction was contrary to the 2003-04 Budget Guidelines and the understanding of Paterson District personnel that the providers need not document their administrative/ indirect costs in the budget document but should retain documentation to support the amount allocated to this expense item. Moreover, the 2003-04 Budget Guidelines allowance of 17.65% for administrative/indirect costs was received by *259 providers as a response to their previously expressed dissatisfaction with the amount of administrative costs allowed by the Paterson District.
In his conclusions of law, the ALJ rejected the contention advanced by the DOE that the Paterson IAU's finding that CFCS underspent administrative/indirect costs should not be disturbed because its finding was not arbitrary, capricious or unreasonable. The ALJ held this standard is applicable only in appellate proceedings and not in a contested matter. As to the merits, the ALJ held that districts that receive public funds must spend those funds in accordance with State rules and regulations and that expenditures are subject to scrutiny. As to the budget guidance instructions given to private providers of preschool programs, the ALJ stated:
[I]t is evident that the DOE has attempted, during the infancy of this program, to develop a balance between its mandate to oversee spending within the Abbott districts and the need to permit these providers to operate with a reasonable degree of flexibility. ... The manner in which the DOE expected providers to allocate and justify their Administrative/Indirect costs changed substantially between the 2002-2003 and 2003-2004 school years. ... [I]n 2002-2003, provider[s] had to have specific sub-categories for Administrative/Indirect costs. The guidance for 2003-2004 however for the first time collapsed administrative costs into one line on the budget in order to provide more flexibility to the providers. ... CFCS conducted itself in 2003-2004 in accordance with what it understood to be the parameters of its rights and what the DOE and Paterson expected of it in terms of accountability under the published guidance.
The ALJ found that the DOE had the authority to place any restrictions it wished on the expenditure of Abbott funds. He concluded, however, that the DOE was not free to review the 2003-04 CFCS expenditures and disallow 2003-04 expenditures based on the 2002-03 budget guidance which was at stark variance to the 2003-04 Budget Guidelines. He further concluded that discounting or prorating various expenditures, such as telephone, gas and electric, office supply and cleaning supplies, for lack of vouchers was not warranted because CFCS had been instructed that it need not itemize each expenditure. Accordingly, the ALJ concluded that CFCS was not required to repay the Paterson District $88,858 because "[i]ts Administrative/Indirect costs for that year did not exceed the 17.65 percent of the Approved Educational Program Costs allowed under the applicable DOE guidance."
On review, the Commissioner interpreted the Initial Decision as a determination that CFCS met its burden to demonstrate that the DOE's actions were unreasonable under the circumstances. She disagreed, however with that determination because the ALJ's decision was based on the faulty premise that the DOE could not hold providers, such as CFCS, to record keeping and expenditure limitations not expressly stated in the budget guidance for a specific school year. The Commissioner stated that
the budget guidance document on which [CFCS] relies is nothing more than a tool developed to assist districts and their providers, in conjunction with related informational and interactive meetings, in constructing approvable budgets for the upcoming school year; it is not  nor was it at any time purported to be  the definitive statement of all fiscal requirements *260 for Abbott preschool providers.
In other words, the 2003-04 Budget Guidelines document cannot be considered a standard against which CFCS can be measured for compliance with budgetary guidelines.
The Commissioner also stated that the record fully supported that providers were informed "through informational meetings and workshops  of the nature and purpose of the new `flat rate' method of budgeting administrative costs for 2003-04, which did not include permission to budget for previously unapprovable costs  such as staffing over and above a director, clerical and janitor." Therefore, without citing to the "applicable law and policy," the Commissioner found "the [DOE]'s review on audit was not  indeed, could not be  limited to the language of the budget guidance document alone, but was properly based on all standards of applicable law and policy."
As to the disallowed costs for computers and postage, the Commissioner held that the Abbott Contract between the Paterson District and CFCS allowed for costs incurred throughout the 2003-04 school year. Accordingly, expenditures for these items at the end of the school year were unquestionably not permitted for 2003-04. She noted, however, that such expenditures would have been permissible if budgeted for the 2004-05 school year.
Finally, recognizing the impact of any obligation to repay funds, the Commissioner directed that payments by CFCS to Paterson should be made in equal monthly installments during the current, 2009-10 school year.
On appeal, CFCS argues that the Commissioner impermissibly set aside factual findings and credibility determinations of the ALJ and made findings of fact not supported by sufficient, competent, or credible evidence in the record. CFCS further argues that it complied with the 2003-04 Budget Guidelines provided to it, but the DOE audited CFCS based on guidance governing prior years.
The Commissioner argues that her determinations should not be vacated in the absence of a showing that the decision is arbitrary or capricious, or lacks support in the record, or violates legislative policies expressed or implied in the statutory scheme administered by the agency. The Commissioner also contends that she has an affirmative obligation to ensure that all school funds are effectively and efficiently utilized, and that she has the authority to recover misspent funds. Further, she posits that her "decision was based on her finding that the appropriate guidelines against which to measure [C]FCS's compliance is not the budget guidance, but rather the regulations and the approved Abbott Contract." The Commissioner insists that the expenses at issue did not comply with the Abbott Contract.
The scope of appellate review of an agency decision is limited. In re Herrmann, 192 N.J. 19, 27, 926 A.2d 350 (2007) (citing In re Carter, 191 N.J. 474, 482, 924 A.2d 525 (2007)). An appellate tribunal will not disturb an agency decision unless there is a "clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28, 926 A.2d 350. This court will only decide whether there is "sufficient credible evidence" in the record, Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); see also Board of Education v. City Council of Elizabeth, 55 N.J. 501, 507-08, 262 A.2d 881 (1970), or whether the agency has properly interpreted and applied the terms of the document governing the relationship between the parties and the relevant law, see Shuster v. Board of Review, 396 N.J.Super. 240, 246-47, 933 *261 A.2d 641 (App.Div.2007) (where this court held the administrative agency mistakenly relied on an administrative regulation and misinterpreted the employment contract between the parties, thus erroneously refusing the plaintiff unemployment benefits). In the latter instance, we must give due regard to the agency's expertise when it is a factor. Cooper Univ. Hosp. v. Jacobs, 191 N.J. 125, 140-41, 922 A.2d 731 (2007).
CFCS does not dispute the scope of our review or the Commissioner's affirmative obligation to ensure effective and efficient expenditure of public education funds, or her authority to recover funds misspent or spent in a manner not in accordance with governing budget rules. CFCS does contest, however, that it spent any funds other than as authorized by the Abbott Contract or applicable statutes, rules and interpretive documents. Indeed, it insists that it budgeted its administrative expenses in strict compliance with the relevant 2003-04 Budget Guidelines and the applicable provisions of the Abbott Contract. Furthermore, CFCS argues that the Commissioner's persistent reliance on earlier budget guidance and instructions not communicated to providers is antithetical to established administrative practice and procedure.
The Commissioner disallowed the CFCS administrative expenses for the 2003-04 school year because she maintains the DOE always limits a provider to a single director, a single clerical worker, and a single janitor. The Commissioner disallowed the computer and postage expenses because CFCS purchased the computers and postage on the last day of the school year. This appeal boils down to whether the stated bases for disallowing the administrative, computer and postage expenses find support in the Abbott Contract, the Budget Guidelines, or any statute or rule.
As an Abbott district, Paterson was subject to regulations adopted by the State Board of Education calculated to improve learning and literacy. These regulations governed private providers of preschool programs, such as CFCS. N.J.A.C. 6A:10A-2.[2] The school district may contract with a private provider to implement required preschool programs. N.J.A.C. 6A:10A-2.2(b). The contract must include "the following expectations, supports and accountability measures" for the local board of education and the private providers, including fiscal assistance in the development and monitoring of the annual budget. N.J.A.C. 6A:10A-2.2(d)3. A private provider must implement sound fiscal practices, including maintenance of a financial management system that provides timely and accurate disclosure of all financial activities related to the contract between the school district and the private provider. N.J.A.C. 6A:10A-2.2(b)9i. The private provider may make expenditures only "in strict accordance with the budget approved by the district board of education and [the DOE]." N.J.A.C. 6A:10A-2.2(b)9ii. The private provider is also required to submit to an annual audit, make available all financial information on request, and submit quarterly expenditure reports. N.J.A.C. 6A:10A-2.2(b)9iv-vi. The local school district is required to prepare a three-year operational plan that includes a commitment to monitor each private provider quarterly and recoup any unexpended funds at the end of the year. N.J.A.C. 6A:10A-2.3(f)2.
*262 The Abbott Contract for the 2003-04 school year provided that CFCS was obliged to submit a quarterly expenditure report to the Paterson District and agreed to recoupment of any unexpended or misspent funds. The quarterly expenditure report was defined as
a report of all actual expenditures with supporting documentation and receipts for each quarter following the payment and report schedule provided in Section VI. Compensation. ... This includes reporting all approved salaries, benefits, payroll taxes, substitute stipends, consumable material and supplies, start-up costs, if applicable, durable materials and supplies, field trips, security costs, cleaning costs, space costs, food and food related costs, special requests, summer enrichment costs, if applicable, administrative and indirect costs on the expenditure report.
CFCS was also obliged to implement sound fiscal practices, including a management system to provide timely and accurate disclosure of all financial activities.
The Abbott Contract also required the Paterson District to provide financial management assistance to CFCS in the development and monitoring of the annual budget. CFCS was required to maintain and make available for audit and/or inspection all books and records requested by various agencies, including the Paterson District and the DOE. CFCS also agreed to comply with the provisions of all statutes and regulations of the State Department of Human Services, Division of Youth and Family Services, the DOE, and any other federal, State, and local statutes and regulations that may apply to its program.
Consistent with its obligation to provide budget guidance, the DOE promulgated and distributed the Budget Guidelines in February 2003. The document provided that local school districts were required to distribute the document to private providers like CFCS. The budget prepared by each provider was to be submitted with the district budget to the DOE. The preface of the Budget Guidelines stated that private providers were "to construct a one-year, zero-based budget reflecting the actual cost of delivering a preschool program meeting Abbott standards to Abbott children." The preface informed users that "the Program Implementation Guidelines and budget guidelines provide the framework for a generally approvable plan and budget." The Budget Guidelines and budget worksheet were designed to "help [the provider] construct [its] center's budget." Notably, the preface stated that "the costs contained in the budget guidelines do not represent maximum costs or caps, but they do define reasonable and customary costs." Although providers may budget for higher amounts in particular categories, the higher amount would be considered a special request but higher administrative or indirect costs would not be considered as a special request.
The portion of the Budget Guidelines document pertaining to Abbott Educational Program Costs addressed classroom computers, and janitor salaries and benefits/cleaning service. The Budget Guidelines allowed existing classrooms already equipped with educational technology to receive prorated annual amounts for replacement, repair and upgrade up to $500 per classroom per year for computers. CFCS was also directed to "identify the cost of [its] cleaning service or indicate the salary and benefits of [its] janitor."
The Budget Guidelines also specifically addressed Administrative and Indirect costs. The Budget Guidelines provided:
No more than 17.65 percent of a provider's total approved Abbott Educational Program budget may be allocated for administrative and indirect costs associated *263 with operating the Abbott preschool program. This administrative/indirect cost allocation includes all administrative and clerical salaries, including the director's salary. It also includes accounting and payroll fees, office equipment, office supplies. (Emphasis supplied.)
The Budget Guidelines continued with the direction that providers did not need to document their administrative costs because each would receive a fixed amount for such costs. The document stated:
Providers do not need to document their administrative and indirect costs, as each provider will receive a fixed amount for such costs based on their approved Abbott Educational Program Costs. To calculate the amount your center may budget for administrative and indirect costs, the budget worksheet automatically applies the following formula to your budget:
Approved Abbott Educational Program Costs × 17.65% = Administrative/Indirect Cost.
CFCS prepared its 2003-04 budget pursuant to this guidance. The 2003-04 budget was approved and signed on July 3, 2003. CFCS received no notice until Fall 2005 that the Paterson IAU had reviewed financial records and supporting documentation and disallowed $88,858 in administrative/indirect costs because those costs were not documented correctly. In its December 2005 final audit report for the 2003-04 school year, the Paterson IAU stated that CFCS did not spend Abbott funds in accordance with the individual line items for several items including administrative/indirect costs.
The Abbott Contract expressly requires CFCS to maintain records of its expenditures. The Paterson IAU and the Commissioner had the authority to disallow any expenditure based on lack of records. The absence of records of specific expenses is, however, not the basis for disallowing the administrative/indirect costs.[3]
Here, the Commissioner disallowed certain administrative/ indirect costs because the DOE has never permitted a preschool provider to recover expenses for more than a single director, a single clerical worker, and a single janitor. However, the Commissioner fails to identify any statute or rule limiting these expenses in this fashion but instead argues the Budget Guidelines promulgated by the DOE have been misunderstood and the guidelines pertaining to administrative/indirect costs have been verbally countermanded.
We need not decide whether the Budget Guidelines promulgated by the DOE and disseminated to private preschool providers are rules as contemplated by N.J.S.A. 52:14B-2(e), or simply internal management statements or intra-agency and inter-agency statements, which are not considered rules and do not have the force of law. N.J.S.A. 52:14B-2(e). We note, however, that the Commissioner seems to invest prior guidance with a scope and effect that bears many characteristics of a rule. See Metromedia, Inc. v. Dir., Div. of Tax., 97 N.J. 313, 478 A.2d 742 (1984).[4] Moreover, N.J.A.C. 6A:23A-1.2, *264 which defines the term "administrative cost," anticipates the preparation and distribution of "reporting directives" on the issue. N.J.A.C. 6A:23A-1.2 defines "administrative cost" as
total administrative costs as reflected in the Comparative Spending Guide and defined in the Uniform Minimum Chart of Accounts for New Jersey Public Schools and by the National Center for Educational Statistics (NCES), as referred to at N.J.A.C. 6A:23-2.2(f)1, and other reporting directives published and distributed by the Commissioner pursuant to N.J.S.A. 18A:4-14 and N.J.A.C. 6A:23-2.
Here, the DOE promulgated such Budget Guidelines for the 2003-04 school year and promptly disregarded them.
Of greater import is the utter dearth of any support in the Abbott Contract, the statutory school funding formula then in effect, or the regulations governing the 2003-04 school year for the Commissioner's "one director, one clerical worker" administrative cost formula. We concede there is language in the Budget Guidelines that may support funding for a single janitor; however, this particular cost is not at issue.[5] Thus, we are confronted with a standard for review of an approved budget line item that is at direct variance with the DOE promulgated and disseminated guidelines and that relies expressly on prior guidelines/standards used in previous budget years and the Commissioner's interpretation of her mandate to require private providers to conduct their programs in an efficient manner.
The absence of any reference to specific statutory or regulatory authority is significant because our standard of review, although generous and deferential to an agency vested with particular and technical responsibilities, still requires that the decision by the Commissioner be grounded in the record and the law. The regulated community also has a reasonable expectation that known and uniform rules, standards, interpretations, advice and statements of policy will be applied to them. When the Commissioner relies on unarticulated standards or statements of policy, we are confronted with the essence of arbitrary action. As stated by this court in the context of a discussion of judicial discretion in State v. Madan, 366 N.J.Super. 98, 109, 840 A.2d 874 (App.Div.2004) (quoting Smith v. Smith, 17 N.J.Super. 128, 132, 85 A.2d 523 (App.Div.1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952)):
discretion is not unbounded and is not the personal predilection of the particular judge. ... "[T]he authority to exercise *265 ... discretion is not an arbitrary power of the individual judge, to be exercised when, and as, his caprice, or passion, or partiality may dictate, or forsooth as his vindictiveness or his idiosyncrasies may inspire."
The same may be said of the execution of discretion vested in any Executive Officer. Disregard of the Budget Guidelines promulgated and disseminated expressly for the 2003-04 school year and substitution of prior practice is the essence of arbitrary conduct and reasoning for resolution of a contested dispute.
We are confronted with a somewhat similar problem for the disallowance of the cost of computer equipment and postage acquired at the end of the 2003-04 school year. The Commissioner does not contest the educational need and use of the equipment and postage. She contests the timing of the expenditure. The Commissioner reasoned that the acquisition of these items at the very end of the school year is impermissible because the budget process anticipates that equipment will be used in the course of the school year and equipment purchased at the end of the school year does not meet that standard.
At oral argument, however, the Commissioner did not take the position that all equipment must be in place at the start of a school year to enable its use throughout the entire year. She admitted that there could be situations in which the full cost of equipment would be allowed even though it was acquired during the course of the school year. She could not tell us, however, at what point in a school year an equipment purchase would be disallowed. While we must defer to the Commissioner in her execution of the Abbott programs, an unarticulated standard of when purchases will be allowed and when disallowed is emblematic of arbitrary action.
We, therefore, reverse the August 8, 2008 order of the Commissioner.
NOTES
[1] Abbott v. Burke, 153 N.J. 480, 710 A.2d 450 (1998).
[2] The regulations in effect for the 2003-04 school year can be found at 35 N.J.R. 4759 to 4766 (October 6, 2003).
[3] We are not persuaded that the failure of the Paterson District to monitor CFCS expenditures on a quarterly basis excuses any expenditure not in conformity with the approved budget or applicable statutes or rules. Similarly, we are not persuaded that any delay in conducting an audit excuses misspent funds. In the end, no private preschool provider may spend public funds for unapproved expenses. On the other hand, neither the Paterson District nor the Commissioner may disallow expenditures based on unarticulated norms.
[4] The Court noted that there are "several important elements of agency action that in combination serve to define [agency action] as either an administrative rule or an administrative adjudication." Id. at 328, 478 A.2d 742. Thus, agency action may constitute an administrative rule when the action:

(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.
Id. at 331-32, 478 A.2d 742.
[5] Budget Guidelines (Final Draft), Abbott Educational Program Costs, Janitor Salaries and Benefits/Cleaning Service.