**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5684-14T1

IN THE MATTER OF JUSTIN
VOIGTSBERGER.

_____

Submitted October 3, 2017 - Decided October 17, 2017

Before Judges Gilson and Mayer.

On appeal from the New Jersey Civil Service
Commission, Docket Nos. 2014-1493 and 2015-
3197.

Justin Voigtsberger, appellant pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Pamela N. Ullman, Deputy Attorney
General, on the statement in lieu of brief).

Christopher A. Orlando, Camden County Counsel,
attorney for respondent Camden County (Emeshe
Arzón, Assistant County Counsel and Howard L.
Goldberg, First Assistant County Counsel, on
the brief).

PER CURIAM

　　Petitioner Justin Voigtsberger appeals from the determination

of the Civil Service Commission (Commission) upholding the

decision of the Camden County Department of Corrections to terminate his employment. We affirm.

Voigtsberger was hired as a corrections officer to serve at the Camden County Correctional Facility (CCCF). Voigtsberger began a one-year working test period at the CCCF. During a working test period, corrections officers are evaluated three times.[1]

During his working test period, Voigtsberger received three unsatisfactory performance evaluations. The negative evaluations noted deficiencies in Voigtsberger's performance including, poor judgment, constant need for supervision, negative interaction with inmates, and inability to accept responsibility or understand the consequences of his actions. In addition to the poor evaluations, the CCCF disciplined Voigtsberger for violations of its rules and regulations and occurrences of conduct unbecoming a public employee. The punishments for the disciplinary incidents included counseling sessions, reprimands, and suspensions.

At the conclusion of his working test period, after reviewing Voigtsberger's unsatisfactory performance evaluations and multiple disciplinary incidents and taking into account the training and

---

[1] Pursuant to N.J.S.A. 11A:4-15, "[t]he purpose of the working test period is to permit an appointing authority to determine whether an employee satisfactorily performs the duties of a title. A working test period is part of the examination process which shall be served in the title to which the certification was issued and the appointment made."

counseling offered to Voigtsberger to improve his performance, the CCCF recommended that that Voigtsberger not be hired. As a result of that recommendation, Voigtsberger was not retained as a corrections officer at the CCCF.

Voigtsberger appealed his termination to the Commission, which referred the matter to the Office of Administrative Law for a hearing. An Administrative Law Judge (ALJ) heard testimony from Voigtsberger, as well as the individuals who evaluated Voigtsberger's performance during his working test period. The CCCF evaluators described incidents demonstrating Voigtsberger's poor judgment, including a specific incident during which Voigtsberger placed other corrections officers and inmates at risk of injury by entering a pod without authorization in response to a confrontational inmate. Other incidents recounted during the hearings included an episode when Voigtsberger spit into an inmate's food tray, as well as occasions when Voigtsberger would be overly friendly and then overly aggressive toward inmates and co-workers.

During the hearings, Voigtsberger expressed his belief that the CCCF engaged in retaliatory conduct resulting in his termination. Voigtsberger testified that the CCCF had knowledge of a prior medical condition and improperly considered his medical condition in issuing negative performance evaluations.

3                                                    A-5684-14T1

Voigtsberger also cited a reported dispute with his superior officer at the CCCF as a reason for his poor performance evaluations.

After considering the testimony, the ALJ determined Voigtsberger violated numerous rules and regulations at the CCCF, including failing to perform an inmate head count when directed, failing to deliver food trays to inmates, spitting into an inmate's food tray, and making excessive noise when performing cell searches. Based on the testimony, the ALJ found that Voigtsberger refused to accept responsibility for his actions, had inadequate knowledge of his job function, and had poor work judgment.

Moreover, the ALJ determined that the CCCF's witnesses did not act in bad faith as they did not exhibit malice or ill will toward Voigtsberger. To the contrary, the ALJ found the CCCF made a good faith determination that if Voigtsberger was hired as a permanent corrections officer, he would cause harm to himself, his co-workers and inmates due to his poor judgment and lack of knowledge as to his job function.

The ALJ also noted Voigtsberger's selective memory when testifying about his negative performance evaluations and the discussions with his supervisors regarding efforts to improve his performance. Based on his limited recall of facts during the hearings, the ALJ found Voigtsberger's testimony was not credible.

After considering the reliable and credible testimony proffered by the CCCF witnesses, the ALJ upheld Voigtsberger's termination.

The Commission affirmed the ALJ's decision. Voigtsberger filed a motion for reconsideration which the Commission denied.

In reviewing administrative agency decisions, appellate courts have a "limited" role. Catholic Family & Cmty. Servs. v. State-Operated Sch. Dist., 412 N.J. Super. 426, 436 (App. Div. 2010). A "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div.) (citing In re Vey, 272 N.J. Super 199, 205, aff'd, 135 N.J. 306 (1994)), certif. denied, 170 N.J. 85 (2001). We give deference to an agency's determination unless the decision is arbitrary, capricious, or is unsupported by substantial credible evidence in the record. In re Herrmann, 192 N.J. 19, 27-28 (2007); Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). We defer to an agency's findings if they could reasonably have been reached on sufficient credible evidence in the record, "considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

The rationale of the working test period is to "permit an appointing authority to determine whether an employee

satisfactorily performs the duties of [his or her] title." N.J.S.A. 11A:4-15. "The whole purpose of a probationary or working test period under the Civil Service system is to supplement the examining process by providing a means for testing an employee's fitness through observed job performance under actual working conditions." Dodd v. Van Riper, 135 N.J.L. 167, 171 (1947). During the working test period, "the employee must demonstrate that he is competent to discharge the duties of the position." Briggs v. Dep't of Civil Serv., 64 N.J. Super. 351, 355 (App. Div. 1960). Termination at the end of the working test period may occur for unsatisfactory performance. See N.J.S.A. 11A:2-6a (4); N.J.A.C. 4A:2-4 and 4A:4-5.4(a).

The ALJ's decision was based on the substantial, credible testimony and the exhibits admitted into evidence. The Commission adopted the ALJ's detailed credibility determination and fact-findings. While Voigtsberger disputes the ALJ's findings, he offers no evidence, other than his own opinion, that his performance during the working test period was satisfactory. Voigtsberger's subjective beliefs are insufficient to prove that the findings of the Commission, were arbitrary, capricious or unreasonable. Having reviewed the record, we conclude the Commission's adoption of the ALJ's detailed credibility

determinations and fact-findings was appropriate and based upon substantial credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5684-14T1