SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**L.R. v. Camden City Public School District (A-61/62-17) (080333)**

**Argued January 28, 2019 -- Decided July 17, 2019**

**PER CURIAM**

These consolidated appeals arise from two actions brought by a parent of a public school student under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and two actions brought by a nonprofit foundation under OPRA and the common law right of access to government documents. Two cases were brought by L.R. against the Camden City Public School District and the Parsippany-Troy Hills Township Public School District, respectively. Two other cases were brought by the Innisfree Foundation (Innisfree) against the Cherry Hill Board of Education and the Hillsborough Township Board of Education, respectively. The four trial courts that considered the issues reached inconsistent decisions, and their judgments were appealed.

The four matters were consolidated by the Appellate Division, which affirmed in part and reversed in part the trial courts' determinations, and remanded for further proceedings. 452 N.J. Super. 56, 96-97 (App. Div. 2017). The court concluded that the records sought in the four matters constituted "government records" under OPRA, N.J.S.A. 47:1A-1.1, and "education records" under the Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g(a)(4)(A). Id. at 82-83. It ruled that the documents would comprise "student records" within the meaning of N.J.A.C. 6A:32-2.1, which are protected from disclosure under the New Jersey Pupil Records Act, N.J.S.A. 18A:36-19, and its implementing regulations, even if redacted to eliminate personally identifiable information in accordance with FERPA. Id. at 83. Accordingly, the Appellate Division held that a requestor cannot gain access to a student record unless the requestor is within one of the categories of "authorized" individuals and entities identified in N.J.A.C. 6A:32-7.5(e)(1) through (16). Id. at 86-87. The Appellate Division suggested, however, that L.R. and Innisfree could seek access to the requested records by means of a court order, as N.J.A.C. 6A:32-7.5(e)(15) provides, and also held that either requestor might qualify as a "bona fide researcher[]" under N.J.A.C. 6A:32-7.5(e)(16). Id. at 87-89. It directed the trial court on remand to determine the applicability of those two potential regulatory pathways to access. Id. at 88, 91-92. To govern the trial court's inquiry as to whether to enter an order permitting access, the Appellate Division adopted the factors set forth in Loigman v. Kimmelman, 102 N.J. 98, 113 (1986). Id. at 89.

1

L.R. and Innisfree filed petitions for certification, which the Court granted, limited to two issues:  the Appellate Division's construction of the term "student record" under N.J.A.C. 6A:32-2.1, and the standard to be applied when a requestor seeks a "court order" pursuant to N.J.A.C. 6A:32-7.5(e)(15).  233 N.J. 222-23 (2018).

**HELD:**  The six members of the Court who participated in this matter agree upon the non-exclusive factors identified in the concurring opinion that govern a court's determination when a requestor, not otherwise authorized by statute or regulation to have access to a given student record, seeks a court order mandating disclosure of that record pursuant to N.J.A.C. 6A:32-7.5(e)(15).  An equally divided Court affirms the Appellate Division's determination that a "student record" under N.J.A.C. 6A:32-2.1 retains its protected status under New Jersey law notwithstanding the school district's redaction from that record of "personally identifiable information," as required by FERPA and its implementing regulations.

1.  The Court considers the following non-exclusive factors, adopted both from Loigman and from Doe v. Poritz, 142 N.J. 1 (1995), to provide a workable framework for a court order for the production of student records under N.J.A.C. 6A:32-7.5(e)(15):  (1) the type of student record requested; (2) the information that the student record contains; (3) the potential for harm in any subsequent nonconsensual disclosure of the student record; (4) the injury from disclosure to the relationship between the educational agency and the student and his or her parents or guardians; (5) the extent to which disclosure will impede the educational agency's functions by discouraging candid disclosure of information regarding students; (6) the effect disclosure may have upon persons who have provided such information; (7) the extent to which agency self-evaluation, program improvement, or other determinations will be chilled by disclosure; (8) the adequacy of safeguards to prevent unauthorized disclosure; (9) the degree of need for access to the student records; and (10) whether there is an express statutory or regulatory mandate, articulated public policy, or other recognized public interest militating toward access.  The Court stresses that not all of the factors will apply in every case and that additional factors not identified in the Appellate Division's opinion or in this opinion may be relevant to a given case. (Patterson, J., concurring, at 41-44; Albin, J., dissenting, at 5, 17)

     **JUSTICE PATTERSON, CONCURRING, joined by JUSTICES LaVECCHIA and SOLOMON,** expresses the view that, as currently drafted, N.J.A.C. 6A:32-2.1 includes in the definition of a "student record" a document containing information relating to an individual student, even if that document has been stripped of personally identifiable information in compliance with federal law.  Justice Patterson notes that FERPA regulations envision that once "personally identifiable information" is redacted, and the educational institute reasonably determines that the record will not reveal the identity of the student at issue, the record may be publicly disclosed; however, the New Jersey Department of Education has not incorporated in a proposed rule the concept of personally identifiable information, or adopted a procedure whereby student

2

records may be disclosed following the redaction of such information. Justice Patterson observes that the Department has acknowledged the need for greater clarity in the regulations that govern access to New Jersey public school student records and adds that the Court welcomes the Department's commitment to provide more detailed guidance.

**JUSTICE ALBIN, DISSENTING IN PART, joined by CHIEF JUSTICE RABNER and JUSTICE TIMPONE,** is of the view that the Department's interpretation of N.J.A.C. 6A:32-2.1 -- that a redacted record that cannot be linked to a pupil is not a student record and therefore can be disclosed pursuant to an OPRA request -- in no way endangers the privacy rights of pupils but allows members of the public to gather information that will shed light on matters of significant public importance, such as student achievement test scores, district graduation rates, district violence and vandalism incidents, bullying and harassment reports, injury and safety records, the cost of lawsuits filed against school districts, and the effectiveness of school programs. Justice Albin notes that N.J.A.C. 6A:32-2.1 is not a model of clarity and lends itself to more than one reasonable interpretation; therefore, Justice Albin explains, because the Department's interpretation of that regulation is not "plainly unreasonable," it is entitled to substantial deference. Justice Albin respectfully dissents from the concurrence's rejection of the Department's reasoned interpretation of N.J.A.C. 6A:32-2.1, but agrees with the concurrence's multi-factor test for securing a court order for pupils' records pursuant to N.J.A.C. 6A:32-7.5(e)(15).

**The members of the Court being equally divided, the judgment of the Appellate Division is AFFIRMED.**

**JUSTICES LaVECCHIA, PATTERSON, and SOLOMON concur in the judgment of the Court and join fully the concurring opinion filed by JUSTICE PATTERSON. JUSTICE ALBIN filed a partially dissenting opinion, in which CHIEF JUSTICE RABNER and JUSTICE TIMPONE join, agreeing with the concurrence's multi-factor test for securing a court order for pupils' records pursuant to N.J.A.C. 6A:32-7.5(e)(15), but dissenting as to the interpretation of N.J.A.C. 6A:32-2.1. JUSTICE FERNANDEZ-VINA did not participate.**

3

# SUPREME COURT OF NEW JERSEY
## A-61/62 September Term 2017
### 080333

L.R., individually and on
behalf of J.R., a minor,

Plaintiffs,

v.

Camden City Public School
District and John C. Oberg in his
official capacity as Interim School Business
Administrator and Board Secretary,

Defendants.

L.R., individually and on
behalf of J.R., a minor,

Plaintiffs-Appellants,

v.

Parsippany-Troy Hills Township
Public School District and David F. Corso
in his official capacity as Records Custodian
of the Parsippany-Troy Hills Township Public
School District,

Defendants-Respondents.

1

The Innisfree Foundation,

Plaintiff-Appellant,

v.

Hillsborough Township Board
of Education and Aiman Mahmoud,
Records Custodian,

Defendants-Respondents.

_____

The Innisfree Foundation,

Plaintiff-Appellant,

v.

Cherry Hill Board of Education
and James Devereaux, Records Custodian,

Defendants-Respondents.

_____

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
452 N.J. Super. 56 (App. Div. 2017).

| Argued | Decided |
| January 28, 2019 | July 17, 2019 |

John D. Rue argued the cause for appellant The Innisfree
Foundation (John Rue & Associates, attorneys; John D.
Rue and Krista L. Haley, of counsel and on the briefs).

Jamie Epstein argued the cause for appellants L.R.,
individually and on behalf of J.R., a minor (Jamie Epstein
and Law Offices of Walter M. Luers, attorneys; Jamie
Epstein and Walter M. Luers, on the briefs).

2

Vittorio S. LaPira argued the cause for respondents Hillsborough Township Board of Education and Aiman Mahmoud (Fogarty & Hara, attorneys; Vittorio S. LaPira of counsel and on the briefs, and Robert D. Lorfink on the briefs).

Raina M. Pitts argued the cause for respondents Cherry Hill Board of Education and James Devereaux (Methfessel & Werbel, attorneys; Raina M. Pitts and Eric L. Harrison, of counsel and on the briefs).

Eric L. Harrison argued the cause for respondents Parsippany-Troy Hills Township Public School District and David F. Corso (Methfessel & Werbel, attorneys; Eric L. Harrison, of counsel and on the briefs, and Raina M. Pitts, on the briefs).

Donna Arons, Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Education (Gurbir S. Grewal, Attorney General, attorney; Melissa Schaffer, Assistant Attorney General, of counsel, and Donna Arons, on the brief).

Cynthia J. Jahn argued the cause for amicus curiae New Jersey School Boards Association (New Jersey School Boards Association, attorneys; Cynthia J. Jahn, on the briefs).

Jeanne LoCicero argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Jeanne LoCicero, Tess Borden, Alexander Shalom, and Edward Barocas, on the briefs).

CJ Griffin submitted a brief on behalf of amicus curiae Libertarians for Transparent Government (Pashman Stein Walder Hayden, attorneys).

Catherine Merino Reisman submitted a brief on behalf of amici curiae Education Law Center and Council of Parent Attorneys and Advocates, Inc. (Reisman Carolla Gran, attorneys).

Krista L. Haley submitted a brief on behalf of amici curiae New Jersey Foundation for Open Government, Brechner Center for Freedom of Information, and Student Press Law Center (John Rue & Associates, attorneys).

PER CURIAM

The judgment of the Appellate Division is affirmed by an equally divided Court.

JUSTICE PATTERSON, concurring.

These consolidated appeals arise from two actions brought by a parent of a public school student under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and two actions brought by a nonprofit foundation under OPRA and the common law right of access to government documents. The requestors sought to compel disclosure of certain educational records maintained by the defendant public school districts. In each case, the school district declined to produce the requested records. The four trial courts that considered the issues reached inconsistent decisions, and their judgments were appealed.

The Appellate Division consolidated the cases and determined that the disputed records constituted "student records" protected from disclosure under the New Jersey Pupil Records Act (NJPRA), N.J.S.A. 18A:36-19, and its implementing regulations. L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 83-87 (App. Div. 2017). It held that pursuant to N.J.A.C. 6A:32-7.5(e), only authorized individuals and entities would be permitted access to such records. Id. at 86-87. The Appellate Division remanded the matters for a determination of whether the requestors could establish a right of access under two regulations that had not been considered by the trial courts, N.J.A.C. 6A:32-7.5(e)(15), which authorizes such access "upon the presentation of a court order," and N.J.A.C. 6A:32-7.5(e)(16), which grants "bona fide researchers" access to student records. Id. at 87-92. It also concluded that the common law right of access factors prescribed in Loigman v. Kimmelman, 102 N.J. 98, 113 (1986), prescribed the governing standard for the issuance of a court order. Id. at 89.

We granted the requestors' petitions for certification, limited to two issues: the Appellate Division's construction of the term "student record" under N.J.A.C. 6A:32-2.1, and the standard to be applied when a requestor seeks a "court order" pursuant to N.J.A.C. 6A:32-7.5(e)(15).

5

We concur with the Appellate Division that a "student record" under N.J.A.C. 6A:32-2.1 retains its protected status under New Jersey law notwithstanding the school district's redaction from that record of "personally identifiable information," as required by the Federal Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, and its implementing regulations. Although New Jersey school districts are required to comply with FERPA and its regulations, no New Jersey statute or regulation authorizes the disclosure of student records after redaction of personally identifiable information or provides that school districts satisfy New Jersey's privacy mandate if they adhere to federal law. To the contrary, the text and history of New Jersey's student record privacy regulations suggest that those regulations are intended to be distinct from -- and stricter than -- those imposed by FERPA and federal regulations.

We conclude that, as currently drafted, N.J.A.C. 6A:32-2.1 includes in the definition of a "student record" a document containing information relating to an individual student, even if that document has been stripped of personally identifiable information that might identify the student in compliance with federal law.

Second, we identify non-exclusive factors to govern a court's determination when a requestor, not otherwise authorized by statute or

6

regulation to have access to a given student record, seeks a court order mandating disclosure of that record pursuant to N.J.A.C. 6A:32-7.5(e)(15). Those factors are derived from Burnett v. County of Bergen, 198 N.J. 408, 427 (2009), in which we applied the standard of Doe v. Poritz, 142 N.J. 1 (1995) in the OPRA setting, and from Loigman, 102 N.J. at 113, in which we addressed the common law right of access to government records.

The New Jersey Department of Education, which participated in these appeals as amicus curiae at our request, acknowledged the need for greater clarity in the regulations that govern access to New Jersey public school student records. We welcome the Department's commitment to provide students, parents, school districts, other educational agencies, and the public with more detailed guidance regarding the sensitive issues raised by these appeals.

## I.

We begin by reviewing each of the four underlying suits and trial court decisions. Two cases were brought by L.R. against the Camden City Public School District (Camden) and the Parsippany-Troy Hills Township Public School District (Parsippany-Troy Hills), respectively. Two other cases were brought by the Innisfree Foundation (Innisfree) against the Cherry Hill Board of Education (Cherry Hill) and the Hillsborough Township Board of Education

7

(Hillsborough), respectively.  We then turn to the single Appellate Division decision in which the four cases were consolidated.

## A.

### 1.

Plaintiff L.R. is the mother of J.R.  In 2014, when this litigation commenced, J.R. was a minor and attended a school operated by Camden.

L.R., acting on J.R.'s behalf, served two records requests pursuant to OPRA on Camden's records custodian.  In those requests, L.R. sought an access log identifying all individuals permitted to view J.R.'s school records. She also sought records, letters, and e-mails containing J.R.'s name from sources specified in her request.

Camden produced redacted versions of the list of individuals with access and other documents but declined L.R.'s requests for several categories of student records on confidentiality grounds.  It also responded that it was not in possession of certain requested categories of documents.

L.R. filed a complaint and an Order to Show Cause in the Law Division against Camden, its records custodian, and the Department of Education, seeking access to the requested documents.  The trial court granted L.R.'s application with respect to the access log, but held that FERPA, not OPRA,

8

was the source of L.R.'s right to that log.  It denied L.R.'s application with respect to the other categories of records sought.  L.R. appealed.

2.

L.R. served a request for records pursuant to OPRA on Parsippany-Troy Hills to permit comparative analysis that would assist in a pending dispute between L.R. and Camden concerning J.R.'s educational needs.  L.R. sought the following records:

> 1. All requests made on behalf of students for independent educational evaluations and all responses to those requests.
>
> 2. All requests made on behalf of students for independent evaluations and all responses to those requests[.]
>
> ([P]lease provide all records with personal identifiers of students and their parents or guardians redacted leaving only initials).

Parsippany-Troy Hills denied the OPRA requests.  It contended, among other assertions, that the records sought "would constitute [] pupil record[s] under N.J.A.C. 6A:32-1.1 et seq. and thus would be exempt from disclosure under OPRA."

L.R. filed a complaint and an Order to Show Cause in the Law Division against Parsippany-Troy Hills and its records custodian.  She asserted that OPRA entitled her to other parents' requests for independent educational

9

evaluations of their children, and responses thereto, "with personal identifiers redacted from all documents and, with respect to names, redacting names and leaving only initials."

The trial court ordered disclosure of the requested documents, redacted to remove personally identifiable information, including the initials of the students whose records would be disclosed.[1] The court reasoned that once redacted, the documents would no longer constitute educational records under FERPA, or student records within the meaning of the NJPRA. Applying the factors set forth in Doe, 142 N.J. at 88, the court ordered disclosure of the documents, redacted in accordance with FERPA to remove personally identifiable information. Based on the volume of the records requested and the anticipated cost of the redactions, the trial court imposed a special service charge of $96,815 on the counsel who had requested the records. See N.J.S.A. 47:1A-5(c). It awarded attorneys' fees to L.R. and J.R. pursuant to N.J.S.A. 47:1A-6.

---

[1] Because L.R. and Camden settled their dispute concerning J.R.'s educational needs while the Parsippany-Troy Hills action was pending, and her counsel represented at oral argument that the records were being requested to assist in other litigation, the trial court sua sponte found that L.R. and J.R. no longer had standing to pursue the matter, and substituted their counsel as the named plaintiff. The Appellate Division reversed the trial court's decision that substituted L.R.'s counsel for L.R. as the named plaintiff. L.R., 452 N.J. Super. at 88 n.10.

10

Parsippany-Troy Hills appealed the trial court's determination, and L.R. cross-appealed to challenge the trial court's substitution of her counsel for her as the plaintiff, as well as the court's holding that students' initials should be redacted from the records prior to disclosure.

3.

Innisfree Foundation (Innisfree) states that it is a nonprofit organization that "assists families of children with disabilities who reside in New Jersey to advocate for their children's educational needs."

Innisfree served OPRA requests on Cherry Hill, seeking the following records:

> All settlement agreements executed in the past two years and related to disputes between Cherry Hill School District and parents of students related to the provision of special education services, where the counterparties were parents (or a single parent) of a child or children for whom special education services were or are either provided or sought. (Personally identifiable information may be redacted).

Innisfree requested that Cherry Hill redact any personally identifiable information related to an individual student before disclosing the records, and further that it provide an index of any requested records withheld as exempt from disclosure under OPRA.

Citing a Government Records Council decision deeming settlement agreements to be "student records" exempt from disclosure under N.J.A.C.

11

6A:32-2.1, Cherry Hill denied Innisfree's request for the documents and the index of records withheld from disclosure.

Innisfree filed a complaint and an Order to Show Cause in the Law Division, asserting claims under OPRA and the common law right of access against Cherry Hill and its records custodian. The trial court ordered Cherry Hill to produce the requested settlement agreements with appropriate redaction and serve an index of documents withheld. It also granted Innisfree's application for attorneys' fees. Cherry Hill appealed.

4.

Innisfree served on Hillsborough an OPRA request -- virtually identical to the request served on Cherry Hill -- for settlement agreements between Hillsborough and parents, related to the provision of special education services to students.

Hillsborough denied Innisfree's OPRA request. It contended that even if the documents at issue were redacted, they would remain education records for purposes of FERPA and "student records" protected by N.J.A.C. 6A:32-2.1, because the records would still contain "information related to an individual student gathered within or outside the school district and maintained within the school district."

12

Innisfree filed a complaint and an Order to Show Cause against Hillsborough and its records custodian in the Law Division, asserting claims based on OPRA and the common law right of access. The trial court denied Innisfree's application and dismissed its complaint. The court held that a document constituting a "student record" under N.J.A.C. 6A:32-2.1 does not lose its protected status under state regulations by virtue of FERPA-mandated redactions. Innisfree appealed.

B.

The four matters were consolidated by the Appellate Division, which granted amicus curiae status to the New Jersey School Boards Association (NJSBA) and the American Civil Liberties Union -- New Jersey (ACLU), as well as to Innisfree in the two cases to which it was not a party. L.R., 452 N.J. Super. at 71-72.

The Appellate Division affirmed in part and reversed in part the trial courts' determinations, and remanded for further proceedings.[2] The court

---

[2] In L.R. v. Camden City Pub. Sch. Dist., the Appellate Division affirmed the trial court's order as to the release of J.R.'s school records, and remanded for further proceedings as to the remaining records in dispute. L.R., 452 N.J. Super. at 96. In L.R. v. Parsippany-Troy Hills Twp. Pub. Sch. Dist., the court vacated the trial court's order mandating disclosure of the requested records, and remanded for further proceedings as to those documents as well. Ibid. In Innisfree Found. v. Hillsborough Twp. Bd. of Educ., the Appellate Division affirmed in part the trial court's order denying access to the documents, without prejudice to Innisfree's right to seek access to those documents

13

concluded that the records sought in the four matters constituted "government records" under OPRA, N.J.S.A. 47:1A-1.1, and "education records" under FERPA, 20 U.S.C. § 1232g(a)(4)(A). Id. at 82-83. It ruled that the documents would comprise "student records" within the meaning of N.J.A.C. 6A:32-2.1, even if redacted to eliminate personally identifiable information in accordance with FERPA. Id. at 83. The Appellate Division acknowledged that N.J.A.C. 6A:32-7.5(g) directs adherence to OPRA and FERPA, but it did not construe that provision to mean that either statute mandated disclosure of student records protected by N.J.A.C. 6A:32-2.1. Id. at 85. Accordingly, the Appellate Division held that a requestor cannot gain access to a student record, even if that record is redacted as FERPA mandates, unless the requestor is within one of the categories of "authorized" individuals and entities identified in N.J.A.C. 6A:32-7.5(e)(1) through (16). Id. at 86-87.

The Appellate Division suggested, however, that L.R. and Innisfree could seek access to the requested records by means of a court order, as N.J.A.C. 6A:32-7.5(e)(15) provides, and also held that either requestor might

---

pursuant to N.J.A.C. 6A:32-7.5(e)(15) or (16). Ibid. In Innisfree Found. v. Cherry Hill Bd. of Educ., the court vacated the trial court's order compelling disclosure of records, and remanded for further proceedings. Ibid. The Appellate Division determined that all four matters should be considered on remand by a single trial judge. Id. at 96-97.

qualify as a "bona fide researcher[]" under N.J.A.C. 6A:32-7.5(e)(16). Id. at 87-89. It directed the trial court on remand to determine the applicability of those two potential regulatory pathways to access. Id. at 88, 91-92.

To govern the trial court's inquiry as to whether to enter an order permitting access, the Appellate Division adopted the factors set forth in Loigman, 102 N.J. at 113. Id. at 89. It required school districts to "afford parents and guardians a reasonable opportunity to comment upon the proposed redactions of records relating to their own child," and cautioned them to "scrupulously observe[]" the three-day parental notice mandated by N.J.A.C. 6A:32-7.6(a)(4) in that regard. Id. at 92.

C.

L.R. and Innisfree filed petitions for certification. We granted certification limited to the following issues:

> (1) Whether the Appellate Division improperly broadened the definition of "student record" embodied in N.J.A.C. 6A:32-2.1 to extend beyond "information related to an individual student" to the entire document in which that information resides; and
>
> (2) Whether the Appellate Division improperly ordered that the balancing of the privacy interests against the interest in disclosure be conducted under the common law right to access rather than the factors set forth in Doe v. Poritz, 142 N.J. 1 (1995).
>
> [233 N.J. 222-23 (2018).]

15

Following the grant of certification, counsel for L.R. notified the Court that L.R. and Camden had resolved their dispute, and her action against Camden was dismissed.

We granted amicus curiae status to the Education Law Center, the Council of Parent Attorneys and Advocates, the New Jersey Foundation for Open Government, the Brechner Center for Freedom of Information, the Student Press Law Center, Libertarians for Transparent Government, and the New Jersey Board of Education. NJSBA and ACLU continued to participate in the appeals as amicus curiae. See R. 1:13-9(d).

At our request, the Department of Education (the Department), which promulgated the New Jersey regulations under consideration, also appeared as amicus curiae. In its brief, the Department challenged the Appellate Division's application of NJPRA and its implementing regulations on the grounds that the court had construed New Jersey regulations to shield more student records than federal law requires, and that the decision unreasonably restricted public access to anonymized aggregate data.

At oral argument, the Department stated that it views "information related to a student" under N.J.A.C. 6A:32-2.1 to denote information identifiable to a particular student. It noted, however, that some categories of student records are so permeated with confidential information about

16

individual students that redaction of personally identifiable information may not sufficiently protect student privacy. The Department argued that in a close case, a school district should err on the side of redacting student information. The Department acknowledged that the dispute in these matters signals the need for clarification of current student record privacy regulations.

II.

A.

The first question on certification requires that we construe OPRA, the NJPRA, and FERPA, as well as regulations adopted pursuant to the NJPRA and FERPA.

When we interpret a statute, our paramount goal is to ascertain the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). "When the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." State v. Shelley, 205 N.J. 320, 323 (2011). Only if the statute is ambiguous, or if a literal reading gives rise to an absurd result, do we consider legislative history or other extrinsic information. See State v. Harper, 229 N.J. 228, 237 (2017). "When interpreting multiple statutes governing the same subject, the Court should attempt to harmonize their provisions." Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013).

17

"We interpret a regulation in the same manner that we would interpret a statute." U.S. Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012). "Generally, under those standards, the intent of the drafters is to be found in the plain language of the enactment." Bedford v. Riello, 195 N.J. 210, 221 (2008) (citing DiProspero, 183 N.J. at 492). "We look to extrinsic evidence if a plain reading of the enactment leads to more than one plausible interpretation." Id. at 222 (citing DiProspero, 183 N.J. at 492-93).

## B.

In 2001, the Legislature enacted OPRA, N.J.S.A. 47:1A-1 to -13, L. 2001, c. 404, replacing the Right to Know Law, N.J.S.A. 47:1A-2 (repealed by L. 2001, c. 404, § 17, effective July 7, 2002). Through the new law, the Legislature "intended to bring greater transparency to the operations of government and public officials." Paff v. Galloway Township., 229 N.J. 340, 352 (2017); see also Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012) (noting the Legislature's goal to "promote transparency in the operation of government").

Under OPRA, a requestor whose demand for government records has been denied may challenge that denial by filing an action in court, or by filing a complaint with the Government Records Council. N.J.S.A. 47:1A-6. In either proceeding, "[t]he public agency shall have the burden of proving that

18

the denial of access is authorized by law." Ibid. A requestor who prevails in such a proceeding "shall be entitled to a reasonable attorney's fee." Ibid.; see also Courier News v. Hunterdon Cty. Prosecutor's Office, 378 N.J. Super. 539, 546 (App. Div. 2005) (holding that fee-shifting under OPRA provides "a vital means of fulfilling" the Legislature's declaration of public policy in favor of a right of access).

To further its goal of ensuring transparency in government, the Legislature provided that "any limitations on the right of access accorded by [the Right to Know Law] as amended and supplemented, shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. The Legislature also broadly defined the term "government record" subject to public access. Ibid. As the parties agree, all documents disputed in these appeals constitute "government records" for purposes of OPRA.

Notwithstanding OPRA's expansive reach, "the right to disclosure is not unlimited, because as we have previously found, OPRA itself makes plain that 'the public's right of access [is] not absolute.'" Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 588 (2011) (alteration in original) (quoting Educ. Law Ctr. v. Dep't of Educ., 198 N.J. 274, 284 (2009)). "That conclusion rests on the fact that OPRA exempts numerous categories of documents and information from disclosure." Ibid.

19

In its findings and declarations of public policy, the Legislature required public agencies subject to OPRA "'to safeguard from public access a citizen's personal information' when 'disclosure thereof would violate the citizen's reasonable expectation of privacy.'" In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 277 (2017) (quoting N.J.S.A. 47:1A-1). That privacy language "appears after OPRA's enactment clause, making the provision part of the body of the law," and it "imposes an obligation on public agencies to protect against disclosure of personal information which would run contrary to reasonable privacy interests." Burnett, 198 N.J. at 423.

Two OPRA provisions exempt from public access government records that are excluded from such access by enumerated sources of law. First, the Legislature's findings and declarations exempt from public access government records that are

> exempt from such access by: L. 1963, c. 73 as amended and supplemented; any other statute; resolution of either or both houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law, federal regulation, or federal order.
>
> [N.J.S.A. 47:1A-1.][3]

---

[3] This provision closely tracked the language of OPRA's predecessor statute, the Right to Know Law, which exempted records from disclosure to the extent "provided in this act or any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of court, any Federal

Second, OPRA "exempts from disclosure any information that is protected by any other state or federal statute, regulation, or executive order." Brennan v. Bergen Cty. Prosecutor's Office, 233 N.J. 330, 338 (2018).  OPRA states that its provisions

> shall not abrogate any exemption of a public record or government record from public access heretofore made pursuant to L. 1963, c. 73; any other statute; resolution of either or both Houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law; federal regulation; or federal order.
>
> [N.J.S.A. 47:1A-9(a).]

Accordingly, to the extent that the disputed student records in these matters are protected from public disclosure by the NJPRA and its implementing regulations, those records are not subject to disclosure under OPRA.

## C.

### 1.

The central issue in these appeals is whether the documents sought by L.R. and Innisfree constitute "student records" under N.J.A.C. 6A:32-2.1 --

___

law, regulation or order, or by any regulation promulgated under the authority of any statute or executive order of the Governor."  N.J.S.A. 47:1A-2 (repealed by L. 2001, c. 404, § 17, effective July 7, 2002).

21

and are thus exempt from disclosure under OPRA -- even if they are redacted to remove personally identifiable information pursuant to FERPA and federal regulations. Our consideration of that issue is informed by the historical development of state and federal student privacy law.

2.

The Legislature enacted the NJPRA in 1944. L. 1944, c. 217. In its original form, the NJPRA did not expressly pronounce on the privacy of student records. It mandated, however, that the State Board of Education develop rules "governing the public inspection of pupil records and the furnishing of any other information relating to the pupils and former pupils of any school district," L. 1944, c. 217, § 1, thereby implicitly recognizing the need for controlled inspection of such information.

In 1967, the Legislature took a further step, amending the NJPRA to mandate promulgation of regulations so that "[p]ublic inspection of pupil records may be permitted and any other information relating to the pupils or former pupils of any school district may be furnished." L. 1967, c. 271 (emphasis added). A regulation adopted pursuant to the NJPRA opened pupil records to inspection by, among other categories of authorized individuals, "persons who, in the judgment of the board of education . . . have a legitimate interest in the records for purposes of systematic educational research,

22

guidance, and social service." N.J.A.C. 6:3-1.3(b) (1969). That said, New Jersey law explicitly acknowledged the privacy of student records -- the regulation authorized a board of education to "withhold items of information which, in the judgment of the said board . . . are of a confidential nature or in which the applicant for such information has no legitimate interest." N.J.A.C. 6:3-1.3(e) (1969). No regulation guided boards of education in making such confidentiality judgments.

2.

Federal law governing the privacy of student records underwent comprehensive reform when Congress enacted FERPA in 1974. Pub. L. No. 93-380, § 438, 88 Stat. 571 (1974). That statute barred federal funding "under any applicable program to any State or local educational agency . . . which has a policy of permitting the release of personally identifiable records or files (or personal information contained therein) of students without the written consent of their parents to any individual, agency, or organization" other than those enumerated. 20 U.S.C. § 1232g(b)(1) (1974). In FERPA, however, Congress did not define either "personally identifiable records or files" or "personal information." See 20 U.S.C. § 1232g (1974).

In an amendment later that year, Congress clarified that FERPA protected "education record[s]," a term defined to mean "records, files,

23

documents, and other materials," which (1) "contain information directly related to a student," and (2) "are maintained by an educational agency or institution or by a person acting for such agency or institution." Pub. L. No. 93-568, § 2(a)(2)(F), 88 Stat. 1859 (1974). In federal regulations proposed in 1975, "education records" were defined as records that: (1) "contain information directly related to a student; and (2) are maintained by an educational agency or institution, or by a party acting for such agency or institution." Privacy Rights of Parents and Students, 40 Fed. Reg. 1208 (proposed Jan. 6, 1975).[4]

The proposed federal regulations limited access, without consent, to "education records" if they contained "personally identifiable" data or information, which was defined to include:

> (a) the name of a student, the student's parent, or other family member, (b) the address of the student, (c) a personal identifier, such as the student's social security number or student number, (d) a list of personal characteristics which would make it possible to identify

---

[4] In its current form, FERPA permits the release of education records without parental consent: to certain school officials at the student's current school and to certain school officials at a school in which the student seeks to or intends to enroll; to certain government officials or contractors; to organizations conducting specified studies for, or on behalf of, educational agencies or institutions for specified purposes and under conditions set forth in the statute; to accrediting organizations; to parents of a dependent student as defined in the statute; to certain enumerated persons in case of emergency; and in connection with financial aid applications. 20 U.S.C. § 1232g(b)(1)(A) to (L).

the student with reasonable certainty, or (e) other information which would make it possible to identify the student with reasonable certainty.

[Id. at 1211.]

Thus, by 1975, FERPA and its proposed implementing regulations had limited the meaning of "education records" to records containing "information directly related to a student," 20 U.S.C. § 1232g (1974); 40 Fed. Reg. 1208, and the proposed regulations incorporated the concept of "personally identifiable" data or information into federal student privacy law, 40 Fed. Reg. at 1211. With their federal funding at stake, see 20 U.S.C. § 1232g(a), (b) (1974), New Jersey educational agencies were required to meet those federal privacy standards.

3.

When it addressed the privacy of student records under state law in the wake of FERPA, the New Jersey Department of Education could have based state regulations on implemented and proposed federal standards, thereby incorporating into New Jersey law the redaction of "personally identifiable information" as the linchpin of student record privacy. Had the Department conformed New Jersey's regulations to their proposed federal counterparts in that manner, student records redacted to remove student and parent names, addresses, social security numbers, and other personally identifiable

25

information would be subject to public disclosure, even if those records retained other information relating to the individual student.  See 40 Fed. Reg. 1208.

When it implemented student privacy regulations, however, New Jersey followed a different path.  As the Legislature later noted, New Jersey undertook "more than a year of study by the department in consultation with various educational associations and interest groups."  S. Educ. Comm. Statement to S. 260 2 (Mar. 29, 1976).

The regulations that resulted from that review were proposed on December 5, 1974, 6 N.J.R. 465, and adopted on June 5, 1975, 7 N.J.R. 251-52.  Those regulations did not track their federal counterparts.  They limited access to "pupil records," defined as "information related to an individual pupil gathered within or without the school system and maintained within the school system, regardless of the physical form in which it is maintained." N.J.A.C. 6:3-2.2 (1975).  The regulations made no mention of the "personally identifiable information" concept at the core of the federal approach.  See ibid. They did not authorize school districts to publicly disclose anonymized "pupil records."  See ibid.

In short, although the New Jersey Department of Education clearly adopted its student privacy regulations in response to FERPA's enactment, it did not model those regulations on federal law.

Nor did the Legislature base its post-FERPA amendments to the NJPRA on FERPA itself. When it amended the NJPRA in 1976, the Legislature cited "two central areas of concern pertaining to the problem of pupil records: the confidentiality of these records and their accessibility to parents and adult students," and cited "general agreement that the current statutes, rules and regulations should be revised to afford greater protection to both parents and students." S. Educ. Comm. Statement to S. 260 1 (Mar. 29, 1976). Although the Legislature acknowledged the role that federal law played in prompting it to amend the NJPRA, see ibid., it nonetheless included in the statute student privacy language specific to New Jersey:

> The State Board of Education shall provide by regulation for the creation, maintenance and retention of pupil records and for the security thereof and access thereto, to provide general protection for the right of the pupil to be supplied with necessary information about herself or himself, the right of the parent or guardian and the adult pupil to be supplied with full information about the pupil, except as may be inconsistent with reasonable protection of the persons involved, the right of both pupil and parent or guardian to reasonable privacy as against other persons and the opportunity for the public schools to have the data necessary to provide a thorough and efficient educational system for all pupils.

27

[L. 1977, c. 346 (codified at N.J.S.A. 18A:36-19).]

That statutory provision remains in effect today.

In the wake of the NJPRA's 1977 amendment, there were no changes to the regulations implementing the NJPRA. Those regulations were next amended effective September 6, 2005. Pursuant to the amended regulations, "[o]nly authorized organizations, agencies or persons as defined in this section [had] access to student records, including student health records." N.J.A.C. 6A:32-7.5(a) (2005). The term "student record," which replaced the term "pupil record" in the amended regulations, was defined to mean:

> information related to an individual student gathered within or outside the school district and maintained within the school district, regardless of the physical form in which it is maintained. Essential in this definition is the idea that any information that is maintained for the purpose of second party review is considered a student record. Therefore, information recorded by certified school personnel solely as a memory aid, not for the use of a second party, is excluded from this definition.
>
> [N.J.A.C. 6A:32-2.1 (2005).]

As amended in 2005, the regulations identified categories of individuals and entities entitled to view student records. N.J.A.C. 6A:32-7.5(e) (2005). Among those categories of individuals and entities authorized to view student records were "[o]rganizations, agencies and individuals outside the school,

28

other than those specified in this section, upon the presentation of a court order." Id. § 7.5(e)(14). "Bona fide researchers" were also permitted access under conditions specified in the regulation. Id. § 7.5(e)(15).

Thus, as it did when it adopted the original NJPRA regulations, the Department of Education maintained the distinctions between New Jersey's student record privacy standard and federal regulations adopted pursuant to FERPA. The regulations did not incorporate the FERPA regulations' requirement that records be "directly related to the student" in order to constitute "education records." Compare N.J.A.C. 6A:32-2.1 (2005), and N.J.A.C. 6A:32-7.5 (2005), with 34 C.F.R. § 99.31 (2005). Nor did they limit protection to records containing "personally identifiable" data or information, as did the federal regulations in effect at that time. Ibid.

4.

In January 2009, the United States Department of Education implemented a procedure for the redaction of "personally identifiable information" from educational records before disclosing such records as a method of protecting student privacy. 34 C.F.R. § 99.3 (2009). Two years later, it adopted a regulation defining "personally identifiable information" to include, but not be limited to:

> (a) The student's name;

29

(b) The name of the student's parent or other family members;

(c) The address of the student or student's family;

(d) A personal identifier, such as the student's social security number, student number, or biometric record;

(e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name;

(f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or

(g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

[34 C.F.R. § 99.3.]

As amended, FERPA regulations envision that once "personally identifiable information" is redacted, and the educational institute reasonably determines that the record will not reveal the identity of the student at issue, the record may be publicly disclosed:

An educational agency or institution, or a party that has received education records or information from education records under this part, may release the records or information without the consent required by § 99.30 after the removal of all personally identifiable information provided that the educational agency or

30

institution or other party has made a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information.

[34 C.F.R. § 99.31(b)(1).]

The New Jersey Department of Education has twice amended N.J.A.C. 6A:32-7.5 since the federal regulations incorporated the redaction of personally identifiable information as a means of ensuring student privacy, see 45 N.J.R. 419(a) (proposed Mar. 4, 2013), 45 N.J.R. 2590(a) (adopted Nov. 14, 2013); 46 N.J.R. 1775(a) (proposed Aug. 18, 2014), 47 N.J.R. 464(a) (adopted Feb. 17, 2015). The Department, however, has not incorporated in a proposed rule the concept of personally identifiable information, or adopted a procedure whereby student records may be disclosed following the redaction of such information.[5]

---

[5] New Jersey has declined in other respects to conform its NJPRA regulations to FERPA regulations. For example, federal regulations allows for production of educational records in response to a "lawfully issued subpoena" as well as a court order, 34 C.F.R. § 99.31(a)(9)(i) to (ii), but only a court order warrants such production under New Jersey regulations, N.J.A.C. 6A:32-7.5(e)(15). Under state regulations, a New Jersey school district served with a court order authorizing disclosure of student records must "give the parent or adult student at least three days' notice of the name of the requesting agency and the specific records requested unless otherwise judicially instructed." N.J.A.C. 6A:32-7.6(a)(4). FERPA regulations, in contrast, require only that the school district "make a reasonable effort to notify the parent or eligible student" of an impending release. 34 C.F.R. § 99.31(a)(9)(ii). In both regards, New Jersey safeguards student privacy more strictly than does federal law.

31

In sum, although New Jersey educational agencies must comply with FERPA and its regulations, and although that introduction of those federal standards prompted state officials to address the question of student record privacy, New Jersey has diverged from the federal path.

C.

Against that backdrop, we review the Appellate Division's holding that a "student record" protected from disclosure under the NJPRA, as defined in N.J.A.C. 6A:32-2.1, remains a student record and retains its protected status even if all "personally identifiable information," as defined in FERPA, is redacted from that record.

1.

We concur with the Appellate Division that the regulation's plain language indicates that a document need not include "personally identifiable information" to constitute a "student record." L.R., 452 N.J. Super. at 82-87. N.J.A.C. 6A:32-2.1 expansively defines a "student record" to denote "information related to an individual student gathered within or outside the school district and maintained within the school district."

Categories of documents addressed in these appeals illustrate the meaningful distinction between that regulatory language and federal law. A settlement agreement between a student's parents and a school district, for

example, might be redacted pursuant to 34 C.F.R. § 99.3 to delete personally identifiable information so that the agreement could not be traced to an individual student. If that redaction left in the agreement information about the student's disability, however, the record would contain "information related to" that student, and would still constitute a "student record" under the plain language of N.J.A.C. 6A:32-2.1. See L.R., 452 N.J. Super. at 84-85. Similarly, an individualized education program developed in accordance with 20 U.S.C. § 1414(d) and N.J.A.C. 6A:14-3.7 might be redacted so the student could not readily be identified, thus satisfying 34 C.F.R. § 99.31(b)(1) and FERPA. If, however, "information related to the student" remained, that document would constitute a "student record" under N.J.A.C. 6A:32-2.1 notwithstanding the federally-mandated redactions.

In short, as the Appellate Division concluded, N.J.A.C. 6A:32-2.1's plain language indicates that a "student record" does not necessarily lose its protected status under state law merely because it is redacted in compliance with FERPA regulations.

2.

We likewise share the Appellate Division's view that N.J.A.C. 6A:32-7.5(g), which states that "[i]n complying with this section, individuals shall

adhere to requirements pursuant to [OPRA] and [FERPA]," does not alter the analysis.  See L.R., 452 N.J. Super. at 85-86.

We do not construe N.J.A.C. 6A:32-7.5(g)'s reference to OPRA to suggest that a requestor's invocation of OPRA undermines the privacy protections set forth in NJRPA regulations.  Instead, N.J.A.C. 6A:32-7.5(g) confirms that individuals and entities may request student records in accordance with OPRA's provisions, and that educational agencies must comply with those provisions when they respond to such requests.  See, e.g., N.J.S.A. 47:1A-5 (prescribing procedure for inspection of public records); N.J.S.A. 47:1A-6 (authorizing requestor to challenge denial of access in Superior Court or Government Records Council).[6]  In mandating compliance with OPRA, N.J.A.C. 6A:32-7.5(g) does not purport to determine whether a given OPRA request will ultimately prevail; indeed, that regulation underscores the Legislature's recognition of exemptions to OPRA created by statute, regulation, and other enumerated sources of law.  N.J.S.A. 47:1A-1, -9.  N.J.A.C. 6A:32-7.5(g)'s mention of OPRA does nothing to resolve the core inquiry in these appeals:  whether the requested documents, if redacted to

---

[6] N.J.A.C. 6A:32-7.5(c) permits a district board of education to charge "a reasonable fee for reproduction of student records," not to exceed the schedule of costs set forth in an OPRA provision, N.J.S.A. 47:1A-5.

remove personally identifiable information, remain "student records" that the NJPRA and its regulations exempt from disclosure under OPRA.

N.J.A.C. 6A:32-7.5(g)'s general reference to FERPA is no more significant to these appeals than its allusion to OPRA. As a matter of New Jersey administrative law, N.J.A.C. 6A:32-7.5(g)'s general reference to FERPA does not incorporate into that regulation the redaction and disclosure procedure set forth at 34 C.F.R. § 99.31(b)(1), or the provisions of any federal statute or regulation addressing the privacy of student records.

When agencies adopt New Jersey administrative regulations, they may "incorporate[] into a rule by reference" sections of New Jersey Statutes Annotated, the United States Code, and the Code of Federal Regulations, as well as other enumerated sources of authority. N.J.A.C. 1:30-2.2(a). They must do so, however, with precision, so that regulated persons and entities are on notice of the requirements imposed on them:

> Any agency incorporating any section of a source by reference shall adopt and file as a rule appropriate language indicating:
>
> 1. What is incorporated including either:
>
>> i. The specific date or issue of the section of the source incorporated; or
>>
>> ii. A statement indicating whether the section incorporated includes future supplements and amendments.

35

2. Where and how a copy of the section can be obtained.

[N.J.A.C. 1:30-2.2(c).]

N.J.A.C. 6A:32-7.5(g) contains no cross-reference to any federal regulation enacted under FERPA, let alone the specific regulation, 34 C.F.R. § 99.31(b)(1), that addresses the disclosure of educational records after redaction of personally identifiable information. It cannot be read to substantively import that regulation into New Jersey student privacy law.

Significantly, as to a subset of student records -- student health records -- the regulation requires that "[a]ccess to and disclosure of" such records "meet the requirements of" FERPA. N.J.A.C. 6A:32-7.5(d). Even that limited provision does not incorporate the redaction procedure prescribed by 34 C.F.R. § 99.31(b)(1) into New Jersey's rule. Moreover, the Commissioner of Education has issued no rule, or even informal guidance, providing that the redaction of personally identifiable information from a student record is sufficient to satisfy the NJPRA's student privacy goals. See In re Request for Solid Waste Util. Customers Lists, 106 N.J. 508, 518-520 (1987) (discussing informal agency action). In short, although N.J.A.C. 6A:32-7.5 generally refers to FERPA, neither 34 C.F.R. § 99.31(b)(1) nor the redaction and disclosure procedure that it prescribes has been made part of New Jersey law.

36

To date, the Department of Education simply has not taken the regulatory steps necessary to provide that a "student record" under N.J.A.C. 6A:32-2.1 loses its privacy protection if a school district redacts the document in accordance with 34 C.F.R. § 99.31(b)(1) -- or to give parents, students, requestors and the public notice of such a provision. Accordingly, we concur with the Appellate Division's conclusion that N.J.A.C. 6A:32-7.5 does not support the contention that a "student record" loses that status if it is redacted to remove personally identifiable information.

3.

Our dissenting colleagues contend that, in its amicus curiae brief, the Department of Education expressed its intention to integrate the FERPA regulations' provisions for redaction and disclosure, 34 C.F.R. § 99.3, into the NJPRA's student privacy regulations. They urge deference to what they characterize as the Department's position. Post at ___ (slip op. at 10-15).

Our dissenting colleagues may be correct in that the Department of Education may indeed intend to incorporate FERPA redaction and disclosure procedures into New Jersey's student privacy regulations, subject to exceptions such as those explained by its counsel at oral argument in this appeal. If it is the Department's intention to incorporate FERPA regulations into their New Jersey counterparts, however, it cannot accomplish that

37

objective in an appellate brief. The Department has yet to "adopt and file as a rule appropriate language indicating . . . [w]hat is incorporated" from federal law into New Jersey even in general terms, much less the precise terms that N.J.A.C. 1:30-2.2(c) requires. Accordingly, the setting of this case is distinct from the ordinary administrative setting in which the agency has promulgated rules under the APA, and its interpretation of those rules is afforded considerable deference.

The provision of clear and specific guidance to the public is a core regulatory function; "[t]he regulated community . . . has a reasonable expectation that known and uniform rules, standards, interpretations, advice and statements of policy will be applied to them." Catholic Family & Cmty. Servs. v. State-Operated Sch. Dist. of City of Paterson, 412 N.J. Super. 426, 442 (App. Div. 2010). In the rulemaking setting, the Department will have ample opportunity to reconcile the compelling interests of public disclosure, parental and student rights of access, and student privacy, and to unmistakably identify any federal regulatory provisions that will be made part of New Jersey student privacy regulations, as N.J.A.C. 1:30-2.2(c) mandates that it do. We anticipate that the rulemaking process that will follow this decision will afford essential guidance to the parties and the public.

4.

We offer two additional comments about the Appellate Division's analysis of the regulations promulgated pursuant to NJPRA.

First, we agree with the Department that the term "student records" in N.J.A.C. 6A:32-2.1 should not be construed to generally bar public disclosure of aggregate data such as average standardized test scores for a school or district, or similar statistical information.[7]  Indeed, a restriction on access to aggregate test score data by those authorized to access student records under N.J.A.C. 6A:32-7.5 could run afoul of the NJPRA, which charges the Department to ensure "the opportunity for the public schools to have the data necessary to provide a thorough and efficient educational system for all pupils."  N.J.S.A. 18A:36-19.  We do not view the Appellate Division's decision to undermine the Department's policy of publicly disclosing certain categories of aggregate data.

As the Department's counsel explained, pursuant to that policy, the public has access to information about student achievement test scores, district graduation rates, district violence and other safety issues, as well as other areas

---

[7]  At oral argument, counsel for the Department explained that the Department and districts make aggregate test score data publicly available on their websites, but that data is withheld if the sample size from which the aggregate data is derived is so small that the aggregate data may reveal a test score of an individual child.

of concern identified by our dissenting colleagues. <u>Post</u> at ___ (slip op. at 3). Our colleagues' suggestion that public access to such composite information is somehow at stake in this appeal is simply wrong.

Second, although neither L.R. nor Innisfree claimed to be a "bona fide researcher" authorized to request "student records" pursuant to N.J.A.C. 6A:32-7.5(e)(16), or asserted "bona fide researcher" status in the OPRA requests, the Appellate Division remanded for a determination of whether either plaintiff constituted such a "researcher." <u>L.R.</u>, 452 N.J. Super. at 87-88. As counsel for the Department explained, school districts must comply with FERPA regulations that govern "researcher" access to personally identifiable information in educational records. <u>See, e.g.</u>, 34 C.F.R. § 99.31(a)(6)(i) (addressing "researcher" status of "organizations conducting studies for, or on behalf of, educational agencies or institutes to: (A) [d]evelop, validate, or administer predictive tests; (B) [a]dminister student aid programs; or (C) [i]mprove instruction"); <u>id.</u> § 99.31(a)(6)(iii) (imposing requirements on researchers). It is unclear whether the Appellate Division considered federal regulations when it suggested that L.R. and Innisfree might be authorized, as "bona fide researchers" under N.J.A.C. 6A:32-7.5(e)(16), to have access to the documents requested.

If, on remand, either L.R. or Innisfree seeks authorization to view student records based on "bona fide researcher" status under N.J.A.C. 6A:32-7.5(e)(16), we caution the remand court to carefully consider both federal and state standards that govern requests by researchers for student records such as those at issue here.

5.

For the reasons stated, we conclude that the Appellate Division did not improperly broaden the definition of "student record" embodied in N.J.A.C. 6A:32-2.1 when it construed that regulation in these appeals.

III.

We next consider the second question on which we granted certification: whether the Appellate Division improperly ordered that the balancing of the privacy interests against the interest in disclosure be conducted under the common-law right to access rather than the factors set forth in Doe v. Poritz, 142 N.J. 1 (1995).

The question of a governing standard for a balancing test arose in the context of the Appellate Division's observation that its construction of the term "student records" under N.J.A.C. 6A:32-2.1 did not bar L.R. and Innisfree from seeking a court order within the meaning of N.J.A.C. 6A:32-75(e)(15), and thereby qualifying as "authorized organizations, agencies, or

41

persons" under N.J.A.C. 6A:32-7.5(a). L.R., 452 N.J. Super. at 88-93. In that setting, the Appellate Division noted the two-part common law test requiring a requestor asserting a common law right of access to (1) establish "'an interest in the public record,'" which can be "'a wholesome public interest or a legitimate private interest,'" and (2) "demonstrate[] that its interest in the records sought 'outweigh[s] the State's interest in non-disclosure.'" Id. at 89 (second alteration in original) (quoting Educ. Law Ctr., 198 N.J. at 302-03). As the standard for that second determination, the Appellate Division relied on the common law factors set forth in Loigman:

> (1) the extent to which disclosure will impede agency functions by discouraging citizens from providing information to the government; (2) the effect disclosure may have upon persons who have given such information, and whether they did so in reliance that their identities would not be disclosed; (3) the extent to which agency self-evaluation, program improvement, or other decision making will be chilled by disclosure; (4) the degree to which the information sought includes factual data as opposed to evaluative reports of policymakers; (5) whether any findings of public misconduct have been insufficiently corrected by remedial measures instituted by the investigative agency; and (6) whether any agency disciplinary or investigatory proceedings have arisen that may circumscribe the individual's asserted need for the materials.
>
> [Loigman, 102 N.J. at 113.]

42

Cherry Hill and Hillsborough, supported by the Department on this issue, urge the Court to adopt the Loigman test.

Innisfree, supported by amicus curiae Libertarians for Transparent Government, urges the Court to instead apply the factors of Doe v. Poritz, adopted by this Court in Burnett for the evaluation of privacy claims under OPRA. Those factors are:

> (1) the type of record requested; (2) the information it does or might contain; (3) the potential for harm in any subsequent nonconsensual disclosure; (4) the injury from disclosure to the relationship in which the record was generated; (5) the adequacy of safeguards to prevent unauthorized disclosure; (6) the degree of need for access; and (7) whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Burnett, 198 N.J. at 427 (quoting Doe, 142 N.J. at 88).]

We do not find either test to be completely pertinent to the issues raised by this appeal. See N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 579 (2017) (noting that not all factors in the Loigman test were relevant to public access to the police-shooting documents at issue). We consider the following non-exclusive factors, adopted from both tests, to provide a workable framework for a court order for the production of student records under N.J.A.C. 6A:32-7.5(e)(15): (1) the type of student record requested; (2) the information that the student record contains; (3) the potential

43

for harm in any subsequent nonconsensual disclosure of the student record; (4) the injury from disclosure to the relationship between the educational agency and the student and his or her parents or guardians; (5) the extent to which disclosure will impede the educational agency's functions by discouraging candid disclosure of information regarding students; (6) the effect disclosure may have upon persons who have provided such information; (7) the extent to which agency self-evaluation, program improvement, or other determinations will be chilled by disclosure; (8) the adequacy of safeguards to prevent unauthorized disclosure; (9) the degree of need for access to the student records; and (10) whether there is an express statutory or regulatory mandate, articulated public policy, or other recognized public interest militating toward access.

Not all of the factors stated above will apply in every case; additional factors not identified in the Appellate Division's opinion or in this opinion may be relevant to a given case.

## IV.

This protracted litigation illustrates an urgent need for greater clarity in the law governing public access to educational records. New Jersey's current NJPRA regulations state general principles, but provide scant guidance to both requestors seeking access under OPRA and the common law, and to the

44

agencies charged with balancing the interest in transparent government with the privacy rights implicated in these appeals. With the law uncertain, educational professionals must divert time and resources from their imperative task of educating the students in their charge.

As this Court has observed, "[t]he basic purpose of establishing agencies to consider and promulgate rules is to delegate the primary authority of implementing policy in a specialized area to governmental bodies with the staff, resources, and expertise to understand and solve those specialized problems." Bergen Pines Cty. Hosp. v. Dep't of Human Servs., 96 N.J. 456, 474 (1984). Administrative regulation also "has elasticity that permits it to adapt to changing circumstances and conditions." Glukowsky v. Equity One, Inc., 180 N.J. 49, 67 (2004).

"[T]he promulgation of administrative rules and regulations lies at the very heart of the administrative process . . . ." Pugliese v. State-Operated Sch. Dist. of City of Newark, 440 N.J. Super. 501, 512 (App. Div. 2015) (alteration in original) (quoting In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super. 100, 115 (App. Div. 2013)). "The rulemaking procedures set forth in the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, are designed to take advantage of the agencies' resources and expertise." Bergen Pines Cty. Hosp., 96 N.J. at 474. Those procedures "give those affected by the proposed rule an opportunity to

participate in the process, both to ensure fairness and also to inform regulators of consequences which they may not have anticipated." In re Provision of Basic Generation Servs. for Period Beginning June 1, 2008, 205 N.J. 339, 349 (2011) (quoting In re Adoption of 2003 Low Income Hous. Tax Credit Qualified Allocation Plan, 369 N.J. Super. 2, 43 (App. Div. 2004)).

As was confirmed by the able presentation of its counsel in these appeals, the New Jersey Department of Education has substantial experience in the creation, content, function, and maintenance of student records in our public schools. The Department recognizes the need to balance public access to government documents, the privacy of students and their families, and the rights of students and their parents to demand access to records that are not available to third parties. The complex task of reconciling those compelling interests requires the Department's expertise.

We appreciate the Department's commitment to give clearer guidance to individuals and entities seeking educational records, and to school districts and other agencies charged with responding to those requests in accordance with OPRA and the common law.

JUSTICES LaVECCHIA, PATTERSON, and SOLOMON concur in the judgment of the Court and join fully the concurring opinion filed by JUSTICE PATTERSON.  JUSTICE ALBIN filed a partially dissenting opinion, in which CHIEF JUSTICE RABNER and JUSTICE TIMPONE join, agreeing with the concurrence's multi-factor test for securing a court order for pupils' records pursuant to N.J.A.C. 6A:32-7.5(e)(15), but dissenting as to the interpretation of N.J.A.C. 6A:32-2.1.  JUSTICE FERNANDEZ-VINA did not participate.

L.R., individually and on
behalf of J.R., a minor,

Plaintiffs,

v.

Camden City Public School
District and John C. Oberg in his
official capacity as Interim School Business
Administrator and Board Secretary,

Defendants.

L.R., individually and on
behalf of J.R., a minor,

Plaintiffs-Appellants,

v.

Parsippany-Troy Hills Township
Public School District and David F. Corso
in his official capacity as Records Custodian
of the Parsippany-Troy Hills Township Public
School District,

Defendants-Respondents.

The Innisfree Foundation,

Plaintiff-Appellant,

v.

1

Hillsborough Township Board
of Education and Aiman Mahmoud,
Records Custodian,

Defendants-Respondents.

The Innisfree Foundation,

Plaintiff-Appellant,

v.

Cherry Hill Board of Education
and James Devereaux, Records Custodian,

Defendants-Respondents.

JUSTICE ALBIN, dissenting in part.

This appeal is about the public's right to know how taxpayer monies are spent on public education and whether students are receiving a thorough and efficient education when the students' right to privacy is not at issue. The heart of this case is the interpretation of a regulation promulgated by the New Jersey State Board of Education, N.J.A.C. 6A:32-2.1, which defines a "student record" under the New Jersey Pupil Records Act (NJPRA), N.J.S.A. 18A:36-19. A student record that identifies a particular pupil is subject to disclosure only to specifically authorized entities, N.J.A.C. 6A:32-7.5(a), and is not subject generally to the Open Public Records Act, N.J.S.A. 47:1A-1 to -13

2

(OPRA). A record, however, that is so thoroughly scrubbed that the student cannot be identified in the record raises no privacy concerns. That is the position of the New Jersey Department of Education (DOE).

The DOE's interpretation of N.J.A.C. 6A:32-2.1 is that a redacted record that cannot be linked to a pupil is not a student record and therefore can be disclosed pursuant to an OPRA request. That interpretation in no way endangers the privacy rights of pupils but allows members of the public to gather information through OPRA requests that will shed light on matters of significant public importance -- student achievement test scores, district graduation rates, district violence and vandalism incidents, bullying and harassment reports, injury and safety records, the cost of lawsuits filed against school districts, and the effectiveness of school programs.

My concurring colleagues' interpretation of N.J.A.C. 6A:32-2.1 is that even a thoroughly redacted record -- one that removes any possibility of linking the identity of a pupil with the record -- remains a non-disclosable student record. That interpretation leads to a lack of transparency in government operations. It denies the public, through OPRA disclosures, vitally important information about the expenditure of billions of dollars on public education each year -- expenditures that account for the greatest percentage of the State's budget. See Department of the Treasury, Citizens'

3

Guide to the Budget 56-60 (Nov. 2017), https://www.nj.gov/treasury/omb/

publications/18citizensguide/citguide.pdf (reporting that $13,385,291,000 was

appropriated to education in 2017, and $13,299,566,000 in 2018, the highest

amount compared to other areas such as human services, corrections, and

environmental protection).

Because the text of N.J.A.C. 6A:32-2.1 is not a model of clarity and

lends itself to more than one reasonable interpretation, this Court invited the

DOE to tell us how it construes the regulation it must enforce.[1]  The DOE's

interpretation of that regulation within its administrative purview is not

"plainly unreasonable" and, for that reason, is entitled to substantial deference.

US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (quoting In re Election

Law Enforcement Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262

(2010)).  That interpretation advances the DOE's policy goals of maintaining

the privacy of pupil records while making our public education system

transparent and therefore accountable to the citizens of this State.

---

[1]  The DOE consists of, among other things, a State Board of Education and a
Commissioner.  N.J.S.A. 18A:4-1.  The State Board of Education has
rulemaking authority under the NJPRA.  N.J.S.A. 18A:36-19.  The
Commissioner enforces "all rules prescribed by the state board."  N.J.S.A.
18A:4-23.  Therefore, the DOE has the authority not only to make rules but
also to enforce them.

I respectfully dissent from my concurring colleagues' rejection of the DOE's reasoned interpretation of N.J.A.C. 6A:32-2.1. In the wake of this decision, our citizens will be denied access to critical information about the education of their children, including the safety of school facilities and the effectiveness of a school's curriculum. In the end, the DOE has the authority to remain the master of its own policy. The State Board of Education need only promulgate a clear regulation -- a regulation not susceptible to misinterpretation -- expressing the views the DOE has already presented to this Court.

I agree with the concurrence's multi-factor test for securing a court order for pupils' records pursuant to N.J.A.C. 6A:32-7.5(e)(15).

## I.

At its inception in 1944, the New Jersey Pupil Records Act (NJPRA) did not address privacy interests of pupils and parents. L. 1944, c. 217. The then-NJPRA simply provided that pupil records could be inspected in accordance with rules adopted by the State Board of Education. Ibid. Our Legislature first recognized the privacy rights of pupils in the wake of federal legislation addressing that subject.

5

A.

In 1974, Congress enacted the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. One purpose of FERPA is to ensure that students' education records are protected from impermissible disclosures to unauthorized entities. Id. § 1232g(b). Except as specifically authorized by statute, FERPA prohibits federal funding of an educational agency or institution that permits the release of education records without the written consent of parents. Id. § 1232g(b)(1). FERPA defines "education records" as records, files, and documents which (1) "contain information directly related to a student," and (2) "are maintained by an educational agency or institution or by a person acting for such agency or institution." Id. § 1232g(a)(4)(A)(i)-(ii). In the face of this legislation, some federal courts considered a fully redacted education record not to be a protected record under FERPA because the information in the record no longer related to the student. See, e.g., United States v. Miami Univ., 294 F.3d 797, 824 (6th Cir. 2002) ("Nothing in the FERPA would prevent the Universities from releasing properly redacted records.").

Consonant with that view, in 2008, the United States Department of Education added language to FERPA's regulations explicitly permitting disclosure of de-identified education records to make clear that fully redacted

6

education records could be disclosed. 34 C.F.R. § 99.31(b)(1) (An educational agency or institution "may release the records . . . without the consent required by § 99.30 <u>after the removal of all personally identifiable information</u> provided that the educational agency . . . has made a reasonable determination that a student's identity is not personally identifiable." (emphasis added)). The addition of section 99.31(b)(1) was intended to clarify that the practice of disclosing fully redacted records was permissible. In explaining the 2008 amendments to FERPA's regulations, the United States Department of Education stated that "the regulatory standard for de-identifying information from education records establishes an appropriate balance that facilitates the release of appropriate information for school accountability and educational research purposes while preserving the statutory privacy protections in FERPA." Family Education Rights and Privacy, 73 Fed. Reg. 74806-01, 74834 (Dec. 9, 2008).

B.

Following FERPA's enactment, in 1977, the Legislature amended the NJPRA to its current form. N.J.S.A. 18A:36-19. The statute empowers the State Board of Education to "provide by regulation for the creation, maintenance and retention of pupil records and for the security thereof and <u>access thereto</u>" and for "the right of both pupil and parent or guardian to

7

reasonable privacy as against other persons." Ibid. (emphasis added). The Senate Education Committee issued an explanatory statement with the amendment providing that, "[o]ver the past year, two developments have occurred regarding the pupil records, both of which have been carefully considered by the committee." S. Educ. Comm. Statement to S. 260 (L. 1977, c. 346). One of those developments "carefully considered" by the Committee was FERPA. Ibid.

Nothing in the NJPRA's legislative history suggests that its privacy protections were intended to be different from those in FERPA. Nothing in that history indicates that the Legislature intended to make de-identified student records less accessible to the public than the records targeted by FERPA.

In 2005, the State Board of Education promulgated N.J.A.C. 6A:32-2.1, which defines a "student record." That regulation provides that a "student record" is "information related to an individual student gathered within or outside the school district and maintained within the school district, regardless of the physical form in which it is maintained." N.J.A.C. 6A:32-2.1 (emphasis added). The DOE submits that N.J.A.C. 6A:32-2.1 -- like its federal cognate provision in FERPA -- does not protect from disclosure information that cannot identify an individual student. A completely de-identified record

8

cannot intrude on the reasonable privacy rights of a parent or pupil because no one could know the student's identity from reading the record. By the DOE's reasoning, an anonymized record is not a student record. The NJPRA's objective of protecting "the right of both pupil and parent or guardian to reasonable privacy as against other persons" is accomplished once a document is fully redacted of all personally identifiable information. See N.J.S.A. 18A:36-19. In short, no privacy interest remains in a record in which all personally identifiable information is eliminated.

In 2005, the State Board of Education also adopted N.J.A.C. 6A:32-7.5, which details those "authorized organizations, agencies or persons" that have access to unredacted student records. Significantly, N.J.A.C. 6A:32-7.5(g) provides that "[i]n complying with this section, individuals shall adhere to requirements pursuant to N.J.S.A. 47:1A-1 et seq., the Open Public Records Act (OPRA) and 20 U.S.C. § 1232g; 34 CFR Part 99, the Family Educational Rights and Privacy Act (FERPA)." The State Board of Education's enactment of N.J.A.C. 6A:32-7.5(g) illustrates its intention to integrate the policies of OPRA and the disclosure processes permitted by FERPA.

C.

In 2002, the Legislature enacted the Open Public Records Act, N.J.S.A. 47:1A-1 to -13. Under OPRA, "government records shall be readily accessible

for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. OPRA is "designed to promote transparency in the operation of government," Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012), and "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process," Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004). The drafters of "OPRA understood that knowledge is power in a democracy, and that without access to information contained in records maintained by public agencies citizens cannot monitor the operation of our government or hold public officials accountable for their actions." Fair Share Hous. Ctr., Inc. v. State League of Municipalities, 207 N.J. 489, 502 (2011).

OPRA encourages private citizens to serve as watchdogs guarding against "wasteful government spending" and "corruption and misconduct." Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 276 (2017) (quoting Burnett v. County of Bergen, 198 N.J. 408, 414 (2009)). OPRA allows for the release of information that might shed light on failed school programs and administrative incompetence. Under OPRA, "any

10

limitations on the right of access . . . shall be construed in favor of the public's right of access."  N.J.S.A. 47:1A-1.

The DOE's interpretation of the definition of "student record" in N.J.A.C. 6A:32-2.1 harmonizes both the NJPRA and OPRA and aligns with FERPA.  Town of Kearny v. Brandt, 214 N.J. 76, 98 (2013) ("When interpreting multiple statutes governing the same subject, the Court should attempt to harmonize their provisions.").  The DOE maintains that a thoroughly de-identified record is no longer "related to an individual student" and therefore is not a "student record," as defined in N.J.A.C. 6A:32-2.1.  That approach accords with OPRA's command that statutory interpretive doubts about the disclosure of government documents "shall be construed in favor of the public's right of access."  See N.J.S.A. 47:1A-1.

II.

A.

Most importantly, because this Court is interpreting a regulatory scheme overseen and enforced by the Department of Education, and because we invited the DOE to appear as amicus curiae to explain the regulation's intended meaning, we accord its interpretation substantial deference.  See In re Adoption of a Child by W.P., 163 N.J. 158, 173-74 (2000) (granting substantial deference to "the position of the Division of Youth and Family

11

Services . . . , which intervened as amicus curiae in this interlocutory appeal" to express its interpretation of the Grandparent Visitation Statute -- an enactment falling within its area of expertise). "We do so because 'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Ibid. (quoting In re Election Law Enforcement Comm'n, 201 N.J. at 262). We therefore must "defer to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is 'plainly unreasonable.'" Ibid. (alterations in original) (quoting In re Election Law Enforcement Comm'n, 201 N.J. at 262).

B.

Because the concurrence's characterization of the DOE's position is not consistent with the DOE's brief or oral argument, the DOE's own words, as set forth in its brief to this Court, are presented here:

> [B]oth the language and history of the pupil records law and regulations support the Department's interpretation that the definition of protected student record embodied in N.J.A.C. 6A:32-2.1 extends only to information identifiable to an individual student or students; once that [personally identifiable information] is removed, the remainder of the document is subject to access under OPRA.

\*\*\*

12

[T]he legislative and regulatory history of the state provisions . . . evince an intention to conform to the provisions of FERPA, which likewise strictly protects student privacy while permitting access to educational records stripped of any identifiable student information.

\*\*\*

Once an education record has met the standard for release under the FERPA requirements, in that it is de-identified and there has been 'a reasonable determination that a student's identity is not personally identifiable . . . [,'] no reasonable privacy interest under State law is served by withholding the remainder of the document.

\*\*\*

[S]hutting down access to sanitized education records . . . ignore[s] the strong policy interest in ensuring that citizens can hold public school districts accountable by obtaining information, largely derived from student records, about school/district performance and compliance.

During oral argument before this Court, moreover, the DOE stated that "information related to an individual student" means "information identifiable to a particular student" and that "the New Jersey Pupil Records Act permits disclosure of education records provided that they are de-identified." (emphasis added). The DOE explained its reasoning for that interpretation:

[The] interests in student privacy and district accountability can both be served by requiring de-identification and removal of all [personally identifiable information] sufficient to meet the

13

> [standards] of FERPA before disclosure of a record. Once that [personally identifiable information] is removed, no reasonable privacy interest is served by banning disclosure of all information in the student records. . . . The Department urges this court to . . . hold, consistent with the Department's interpretation of its own regulations, that the definition of student record prohibits public access only to identifiable student information in education records.

The concurrence highlights that during oral argument, the DOE "noted . . . that some categories of student records are so permeated with confidential information about individual students that redaction of personally identifiable information may not sufficiently protect student privacy," and that "in a close case, a school district should err on the side of redacting student information." Ante at ___ (slip op. at 16-17). Those views speak only to the difficulty of proper redaction. Surely, proper redaction -- ensuring that a student is not identifiable -- may be, in some cases, difficult or even impossible. The views expressed by the DOE at oral argument are in accord with its position that once a student record has been properly redacted, it is no longer a student record under its regulation.

The DOE has made clear its interpretation of "student record" in N.J.A.C. 6A:32-2.1, its understanding of the statutory and regulatory history of the NJPRA, and its conviction that the NJPRA and FERPA are aligned in authorizing the release of a completely de-identified student record. That the

14

concurrence has reached one reasonable interpretation of the text of N.J.A.C. 6A:32-2.1 does not render the DOE's interpretation "plainly unreasonable." See US Bank, N.A., 210 N.J. at 200.

This Court should defer to the DOE's reasonable interpretation of the NJPRA because of its "experience and specialized knowledge" in the area of public education and because policy decisions concerning the proper balance between protecting the privacy interests of student records and making school districts accountable to the public fall within its purview. See ibid.

The concurrence "agree[s] with the Department of Education that the term 'student records' in N.J.A.C. 6A:32-2.1 should not be construed to generally bar public disclosure of aggregate data" published by the DOE or school districts. Ante at ___ (slip op. at 39). The DOE has told us, however, that the transparency and accountability of government operations should not depend on what the government decides to release to the public in an aggregate form. OPRA allows private citizens to extract pieces of information from government records and to aggregate that data for the benefit of the public. See Paff v. Galloway Township, 229 N.J. 340, 357 (2017). A democratic society cannot function without an informed citizenry. That is the view strongly expressed by the DOE.

## C.

Ultimately, the State Board of Education is responsible for adopting clear regulations that advance the legislative policies embodied in the NJPRA. The DOE conveyed to this Court -- in its brief and at oral argument -- its view of the meaning of a student record in the State Board's regulation, N.J.A.C. 6A:32-2.1. The concurrence has rejected that interpretation. Now the State Board, if it wishes, can draft a new regulation that will not be susceptible to misinterpretation. It can provide greater guidance than previously afforded by N.J.A.C. 6A:32-2.1 by specifically articulating in a new regulation the process for de-identifying a student record and the standard for determining whether de-identification is possible or not possible in a particular case. FERPA gives much more precise direction than the NJPRA on the subject of the disclosure of student records. School districts need detailed guidelines on how to effectuate the de-identification of student records. A new regulation can assure that a student record is not sufficiently redacted unless a school administrator makes "a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information." 34 C.F.R. § 99.31. That would address the legitimate privacy concerns of students and parents.

16

## III.

For the reasons expressed, I respectfully dissent because the concurrence has not accorded the DOE's interpretation of its regulatory scheme the deference to which it is entitled. The State Board of Education has the power to promulgate a new regulation in furtherance of its policy goals.

I agree with Part III of the concurrence's opinion.