NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1422-23

FRIENDS OF TEAM CHARTER
SCHOOLS, INC.,

    Petitioner-Appellant,

v.

BOARD OF EDUCATION OF
THE CITY OF NEWARK,
ESSEX COUNTY,

    Respondent-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 29, 2026**
>
> **APPELLATE DIVISION**

Submitted October 21, 2025 – Decided January 29, 2026

Before Judges Sumners, Chase, and Augostini.

On appeal from the New Jersey Commissioner of Education, Docket No. 55-4/21.

Johnston Law Firm LLC, attorneys for appellant (Thomas O. Johnston, on the briefs).

Sattiraju & Tharney, LLP, attorneys for respondent Board of Education of the City of Newark (Matthew J. Tharney, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Commissioner of Education (Donna Arons, Assistant Attorney General, of counsel; Ryan J. Silver, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SUMNERS, JR., C.J.A.D.

The issue before us, one of first impression, is whether the Newark Board of Education (School Board) needs prior approval of the Commissioner of Education under the Educational Facilities Construction and Financing Act (EFCFA), N.J.S.A. 18A:7G-1 to -48, to pursue Superior Court litigation to enforce its contractual reversionary rights to property it transferred to the Newark Housing Authority pursuant to a Site Disposition and Development Agreement (agreement). The agreement provided the School Board with rights of reversion if the property is not developed for "housing, redevelopment and economic development" purposes within three years of the school's transfer.

The School Board sued the Housing Authority and Friends of Team Charter Schools, Inc. (FTCS)—which purchased the property from the Housing Authority for use as a charter school—in the Chancery Division to enforce its reversionary rights because the property was not used in accordance with the agreement.

After FTCS's motion to dismiss was denied, it petitioned the Commissioner to require that the School Board obtain the Commissioner's approval under the EFCFA before the School Board can litigate its purported

A-1422-23

reversionary rights. The Commissioner denied relief, deciding that the School Board's litigation to reclaim ownership was "neither a school facilities project nor a land acquisition as contemplated under EFCFA and the related regulations; and that neither EFCFA nor the related regulations required [the School Board] to seek approval from the Commissioner prior to initiating the enforcement litigation." The Commissioner added the EFCFA would only take effect if the School Board reacquired the property and used it for a school facilities project.

We conclude that under our standard of review, the Commissioner's decision was not arbitrary, capricious, or unreasonable because the Commissioner properly interpreted the EFCFA. The Commissioner did not— nor do we—determine whether the School Board has reversionary rights to the property through its agreement with the Housing Authority. That must be decided in the School Board's pending Superior Court litigation.

I.

In April 2016, the School Board transferred 33-47 Maple Avenue (Maple Avenue School) and eleven other "unutilized or under-utilized public school sites" to the Housing Authority for nominal consideration[1] based upon the "experience, expertise and resources available to [the Housing Authority] in

---

[1] The consideration for Maple Avenue School was for $1.

order to pursue development and housing opportunities." The parties' transfer agreement provided that the properties were to be sold to third parties for the development of "Site Projects," limited to "housing, redevelopment and economic development" projects. The School Board maintained a "right of reversion" to any of the properties if they were not developed for a Site Project "within three (3) years from the date" the agreement was executed. The Housing Authority's resolution approving the agreement acknowledged the transfers were in accordance with N.J.S.A. 18A:20-9, which provides that if a property "shall cease to be used for any of the purposes contemplated by this section, such property shall thereupon revert to and the title thereof shall vest in the board of education making the conveyance thereof hereunder."

In December 2017, the Housing Authority sold the Maple Ave. School to developer 33 Maple Urban Renewal LLC (33 Maple) for approximately $1 million. In March 2020, 33 Maple sold the property to FTCS for $10 million. The property was renovated and leased to TEAM Academy Charter School, Inc. to house its charter school.

On April 6, the School Board sued the Housing Authority in the Chancery Division to enforce its reversionary rights because the Maple Avenue School was being used as a charter school, a non-permitted use under the transfer

4

agreement with the Housing Authority. The School Board did not obtain approval from the Commissioner before suing. FTCS was subsequently added as a defendant. On December 15, the Chancery Division denied FTCS's motion under Rules 4:69-6 and 4:6-2(e) to dismiss the complaint.[2]

Undeterred, FTCS sought administrative relief. On April 13, 2021, it filed a two-count petition of appeal with the Commissioner. In count one, FTCS alleged the School Board unlawfully commenced the Chancery Division litigation because "important decisions such as capital projects" and "large facility project[s]" require "a certain vote by [the School Board] . . . and [the] Commissioner of Education['s] submission and approval." In count two, FTCS alleged the litigation was a "school facilities project," obligating the School Board under the EFCFA and its regulations to obtain the Commissioner's approval before seeking judicial relief. FTCS requested the Commissioner declare the litigation unlawful and restrain the School Board from prosecuting the litigation without the Commissioner's approval.

---

[2] The court also dismissed count six of the School Board's amended complaint, tortious interference with prospective economic advantage, against FTCS without prejudice. The court allowed the School Board to amend their complaint within ten days.

A-1422-23

The matter was transferred to the Office of Administrative Law as a contested matter. An Administrative Law Judge (ALJ) granted the School Board's motion to dismiss the petition as untimely.

On October 19, 2021, the Acting Commissioner disagreed with the dismissal and remanded the matter to the ALJ to determine whether the Chancery Division litigation "could constitute land acquisition and/or a school facilities project, subject to applicable statutes and regulations."

Following remand, the ALJ heard the parties' respective summary judgment motions. The ALJ denied the motions, determining it was "premature" to decide whether the filing of the Chancery Division litigation constituted a "school facilities project" until the court decided the matter.

On November 14, 2022, the Acting Commissioner again rejected the ALJ's decision, remanding the matter for a ruling on the merits. The Acting Commissioner reasoned "the question of whether the filing of the [Chancery Division] complaint required the approval of the [School] Board, or of the Commissioner as a school facilities project, is ripe for review." The Acting Commissioner instructed the ALJ that: "If it is determined that the [Chancery Division] complaint is a school facilities project, and that the [School] Board

A-1422-23

should have obtained the Commissioner's approval of that project prior to filing the complaint, then the complaint should not proceed."

In the second remand, the ALJ granted the School Board's summary judgment motion and denied the FTCS's summary judgment motion. The ALJ ruled that because the School Board was "not attempting to purchase the Maple Avenue [S]chool," nor "attempting to acquire [the school] by condemnation, gift, or grant," the Chancery Division litigation was "not a school facilit[ies] project," nor was it "new construction," or "rehabilitation" requiring the Commissioner's approval under the EFCFA. The ALJ also noted that because the "civil action is based on whether [the School Board] is entitled to reversion of the property based on the contract," this is "not a school facility matter or land acquisition."

After considering exceptions and replies by the parties, the Acting Commissioner, on December 5, 2023, "adopt[ed] the ALJ's findings of fact and conclusions of law, as modified," framing the "sole legal question to be resolved [as] whether a pending [Chancery Division] enforcement action initiated by [the School Board] to reclaim title to the [property] could constitute land acquisition and/or a school facilities project." The Acting Commissioner held that the civil litigation "does not fall within the plain language statutory or regulatory

7

definitions of school facilities project" under the EFCFA. The Acting Commissioner reasoned the litigation itself is not "planning, acquisition, demolition, construction, improvement, alteration, modernization, renovation, reconstruction or capital maintenance of all or part of a school facility" under N.J.S.A. 18A:7G-3. Nor is it "new construction" or "rehabilitation" under N.J.A.C. 6A:26-1.2.

The Acting Commissioner stressed that the "unique factual scenario presented here was clearly neither contemplated by the Legislature nor by those who drafted the regulations, and [FTCS] ha[d] not cited any decisional law on point that directly support[ed] its position." The Acting Commissioner rejected FTCS's contention that because the phrases "legal services" and "site acquisition" appear in N.J.S.A. 18A:7G-3, the litigation itself is a school facilities project. The Acting Commissioner noted "[a]pplications for school facilities projects are initiated by [school] districts seeking funding," and there "is nothing in the record to indicate that [the School Board] is seeking State funding under EFCFA to potentially reacquire the Maple Avenue School site via litigation."

The Acting Commissioner acknowledged that "land acquisition" is not defined in the EFCFA but looked to "N.J.A.C. 6A:26-1.2 [which] defines [it] as

'an acquisition of land, whether by purchase, condemnation, or by gift or grant, to be used as a school site.'" Should the School Board prevail in its litigation to reclaim the property, the Acting Commissioner stated it would not be reacquiring the property by "purchase, condemnation, or by gift or grant," as its claim is "based upon a reversionary interest expressed within the [a]greement." The litigation is also "not a preconstruction acquisition of land as contemplated under EFCFA's regulatory scheme," according to the Acting Commissioner. However, the Acting Commissioner held that if the School Board regained ownership of the property and planned to use it as a school facility, it "will be expected to follow the process set forth in EFCFA and related regulations."

FTCS moved for reconsideration of the Acting Commissioner's final decision, arguing it was based, in part, on the erroneous factual finding that the School Board intended to demolish the Maple Avenue School, and that, instead, the School Board intended to "acquire an existing facility." On February 6, 2024, a different Acting Commissioner denied the motion, finding the reconsideration issue was "beyond the scope of the remand." Notwithstanding,

A-1422-23

the Acting Commissioner noted the factual finding came from FTCS's own submissions and was thus "not a sufficient basis for reconsideration."[3]

## II

## A.

Before us, FTCS contends the Commissioner misinterpreted the EFCFA and its implementing regulations in deciding the School Board did not need the Commissioner's approval before suing to enforce its revisionary rights to Maple Avenue School. Our review of the Commissioner's decision is limited, Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018), because an "agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record,'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

To assess an agency's action, we make three inquiries:

> (1) whether the agency action violates express or implied legislative policies . . . ;

---

[3] On October 29, 2024, the Chancery Division granted summary judgment dismissal with prejudice of the School Board's amended complaint against FTCS and granted summary judgment on FTCS's counterclaim awarding it $768,487.05 in damages. An appeal of that order and several other orders in the litigation are pending before this court.

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto. Grp. Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

We are mindful that our review "owes substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). Given this deference, we do "not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Allstars Auto. Grp. Inc., 234 N.J. at 158 (quoting In re Stallworth, 208 N.J. at 194). That said, we are not "bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting Dep't of Children & Families, DYFS v. T.B., 207 N.J. 294, 302 (2011) (alteration in original)).

Before applying these governing principles to the specific arguments raised on appeal, we briefly discuss the EFCFA and its relevant regulations.

The Legislature enacted the EFCFA in 2000 to comply with its constitutional obligation to fund new school construction. Lonegan v. State, 176

N.J. 2, 6 (2003). For school districts, such as the School Board, covered under the Schools Development Authority (SDA), the Department of Education (DOE) and SDA oversees and funds one hundred percent of the final eligible costs for school projects. N.J.S.A. 18A:7G-5(k). The school district must have in place a long-range facilities plan (LRFP) detailing "the district's school facilities needs and the district's plan to address those needs." N.J.S.A. 18A:7G-4(a). Moreover, the School Board seeking funding for a "school facilities project shall apply to the commissioner for approval of the project," which, among other things, must be consistent with its LRFP. N.J.S.A. 18A:7G-5(d)(1).

The EFCFA defines a "school facilities project" as

> the planning, acquisition, demolition, construction, improvement, alteration, modernization, renovation, reconstruction or capital maintenance of all or any part of a school facility or of any other personal property necessary for, or ancillary to, any school facility, and shall include fixtures, furnishings and equipment, and shall also include, but is not limited to, site acquisition, site development, the services of design professionals, such as engineers and architects, construction management, legal services, financing costs and administrative costs and expenses incurred in connection with the project.
>
> [N.J.S.A. 18A:7G-3.]

To "qualify as a school facilities project, the project must be new construction to meet the housing needs of unhoused students, or rehabilitation

to keep a school facility functional for its original purpose." N.J.A.C. 6A:26-1.2. "A school district shall not take any action to acquire the land prior to obtaining [DOE] approval." N.J.A.C. 6A:26-7.1.

B.

FTCS argues the litigation is subject to the Commissioner's approval because as a "school facilities project" under N.J.S.A. 18A:7G-3 and N.J.A.C. 6A:26-1.2, and a "land acquisition" under N.J.A.C. 6A:26-7.1, it seeks to "acquire" the Maple Avenue School property to construct a new school. The School Board's 2022 LRFP has a $160 million line item for the purchase and new construction of the "Maple Avenue Replacement School Site." FTCS stresses the litigation qualifies as a school facilities project because per N.J.S.A. 18A:7G-3, it specifically involves "legal services . . . incurred in connection with the project," including the "acquisition . . . of . . . a school facility," the Maple Avenue School. (Emphasis added).

FTCS's contention stands on its interpretation of "acquire." This reading, however, is not supported by the plain language of the ECFCA and regulations. See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (holding courts "ascribe to the statutory words their ordinary meaning and significance"); L.R. v. Camden City Pub. Sch. Dist., 238 N.J. 547, 558 (2019) (Patterson, J., concurring)

13

(applying statutory rules of construction to regulations). Neither the EFCFA nor its regulations define the terms "acquisition" or "acquire"; however, "land acquisition" is defined as "an acquisition of land, whether by purchase, condemnation, or by gift or grant, to be used as a school site." N.J.A.C. 6A:26-1.2. Thus, in the context of the EFCFA, acquisition means an acquisition of property by purchase, condemnation, gift, or grant. Ibid.

We see no merit in FTCS's contention that a court judgment in the litigation reverting title to the School Board is a "grant" as set forth in N.J.A.C. 6A:26-1.2. "Grant" is not defined in the EFCFA or its regulations; considering its plain meaning, the word refers to a voluntary conveyance of property, usually by agreement.[4] See N.J.S.A. 18A:7G-1 to -48. And here, the School Board's litigation is not a voluntary conveyance proceeding. As the Commissioner correctly found, the civil action seeks legal "enforcement . . . [because] various parties breached the [a]greement" transferring Maple Avenue School.

---

[4] As a verb, "grant" means "[t]o give or confer (something), with or without compensation," or to "formally transfer (real property) by deed or other writing." Black's Law Dictionary, 707 (7th ed. 1999). As a noun, "grant" means an "agreement that creates a right of any description other than the one held by the grantor," such as a lease, or "[t]he document by which a transfer [of real property] is effected," such as a deed. Ibid.

The School Board's litigation seeks to enforce its reversionary rights to reclaim title to the Maple Avenue School because it was not developed in accordance with the transfer agreement. The reversionary interest is a "future interest left in a transferor or his successor in interest," which "arises when the grantor transfers less than his entire interest in a piece of land, and it is either certain or possible that he will retake the transferred interest at a future date." Marvin M. Brandt Revocable Tr. v. United States, 572 U.S. 93, 105 n.4 (2014) (internal quotations and citation omitted). There is nothing arbitrary, capricious, or unreasonable about the Commissioner's reasoning that the litigation to enforce a reversionary interest claim is not an "acquisition" of a school facilities project under the plain meaning of the term in the ECFCA and its regulations. Moreover, as the Commissioner held, there "cannot be . . . a thorough review of a school facilities project for educational adequacy and safety, . . . [nor a] fully informed decision in an expedited manner as required by EFCFA" when the litigation's outcome is undecided and there are no proposed plans for the property and no request for State funding.

C.

Notwithstanding whether the School Board's litigation to reclaim title to Maple Avenue School is "a school facilities project," or "land acquisition,"

15

FTCS contends the litigation involves the acquisition of an existing facility, a capital project, and preconstruction activities, which are all subject to the Commissioner's approval.

An existing facility is set forth in N.J.A.C. 6A:26-7.3(a), which provides:

> A district board of education planning to acquire an existing facility through purchase, gift, lease, or otherwise shall comply with all procedures and rules pertaining to the appropriation and use of capital funds as required by N.J.S.A. 18A:20-4 and 4.2. The school district shall also have the facility approved in accordance with N.J.A.C. 6A:26-3, which applies to the acquisition of a school site and for the construction of a new facility.
>
> [(Emphasis added).]

Neither does the litigation fall within the "otherwise" catch-all provision. N.J.A.C. 6A:26-7.3(a). As we concluded above, the litigation is not an "acquisition" contemplated by the ECFCA and its regulations but an effort to reclaim title and possession to the Maple Avenue School through rights of reversion. Moreover, the term "otherwise" would be limited to actions similar in nature to those immediately preceding it, such as "purchase, gift, [and] lease." See State v. Hoffman, 149 N.J. 564, 584 (1997) (holding that under the rule of construction of ejusdem generis, "when general words follow specific words in a statutory enumeration, the general words are construed to embrace only the

objects similar in nature to those objects enumerated by the preceding specific words") (omitting internal citation).

A capital project is a "school facilities project, other capital project or land acquisition project." N.J.A.C. 6A:26-1.2. "All capital projects shall be undertaken in accordance with this subchapter." N.J.A.C. 6A:26-3.1(a).

SDA districts "may request the initiation of preconstruction activities in connection with a school facilities project." N.J.A.C. 6A:26-3.9(b). "Preconstruction activities" are defined as:

> [T]he activities that must be undertaken prior to completion and submission to the [DOE] of a school facilities project application for approval and calculation of preliminary eligible costs. Such activities can include site analysis, acquisition of land, remediation, site development, feasibility studies, design work, and acquisition of and design work for temporary facilities.
>
> [N.J.A.C. 6A:26-1.2.]

Additionally, preconstruction activities are not themselves a school facilities project and, to obtain pre-approval, they must be undertaken "in connection with a school facilities project." N.J.A.C. 6A:26-3.9(b)(1).

The Commissioner correctly found FTCS's arguments that the litigation constitutes "preconstruction activities" or a "capital project" were not set forth in its petition and are outside the scope of remand. In both remand decisions,

17

the Commissioner explained the issue is whether the litigation "could constitute land acquisition and/or a school facilities project, subject to applicable statutes and regulations." Yet, even if the arguments were raised, they are without merit.

The regulatory definitions of "preconstruction activities" and "capital project" are tied to a "school facilities project" or "land acquisition." See N.J.A.C. 6A:26-1.2. And as we concluded above, the School Board's litigation is not a "school facilities project" or "land acquisition" under the EFCFA and its regulations. The litigation is not an effort to advance a school facilities project, but a civil action to enforce School Board's reversionary rights set forth in its agreement transferring the Maple Avenue School.

In conclusion, there is no provision in the EFCFA or its regulations requiring the Commissioner to approve the School Board's Chancery Division litigation to enforce its revisionary rights to its former property.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18                                                    A-1422-23